In the Matter of the Transfer Tax upon the Estate of Sigismund L. Fieux, Deceased.

Maurice Fieux et al., Individually and as Executors, Appellants; State Tax Commission, Respondent.

**Tax — transfer tax — contract — agreement between stockholders that each would hold stock subject to right of the others to purchase at his death or severance of connection with corporation — purchase of stock pursuant to such agreement on death of a stockholder not a taxable transfer.**

An irrevocable contract entered into by five stockholders of a corporation, upon good and valuable consideration, whereby each bound himself not to dispose of any of his stock, but to hold it intact for the benefit of the other four parties, and to sell it at par to his associates, at their election, on his severance of his connection with the corporation by voluntary act or by his death, is not a transfer,

agreement or deed made in contemplation of death, or to take effect at death, within the meaning of section 220 of the Tax Law (L. 1909, ch. 62, amd. L. 1922, ch. 430) providing for a tax upon such transfers. The agreement and its binding irrevocable obligations took effect when made. The right to purchase the stock at par could take effect in the lifetime of the parties as well as at death. Resignation from the corporation, or death, merely marked the time when the right of purchase could be exercised. Nor was the agreement made on such a consideration as to evidence an attempt to evade the Tax Law. The promises were mutual and each was obliged to hold his stock subject to the right of the others to purchase. A purchase of the stock of one of the parties, therefore, made by two others upon his death, was not a taxable transfer and the assessment of a transfer tax thereon was error. (*Matter of Cole*, 235 N. Y. 48; *Matter of Baker*, 83 App. Div. 530; 178 N. Y. 575, followed; *Matter of Cory*, 177 App. Div. 871; 221 N. Y. 612; *Matter of Orvis*, 223 N. Y. 1, distinguished.)

*Matter of Fieux*, 212 App. Div. 868, reversed.

(Argued October 7, 1925; decided November 24, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 20, 1925, which affirmed an order of the New York County Surrogate's Court assessing a transfer tax upon the estate of Sigismund L. Fieux, deceased.

*Hiram C. Todd* and *Donald B. Vail* for appellants. The transfer is not taxable because it was based upon an irrevocable agreement immediately determining all of the rights of the parties, including the right to this transfer based upon valuable consideration, and in which death merely sets the time when part of the terms of the agreement are to be performed. (*Matter of Cole*, 202 App. Div. 546; 235 N. Y. 48; *Matter of Baker*, 83 App. Div. 530; 178 N. Y. 575.)

*Charles A. Curtin* and *A. Welles Stump* for respondent. The difference between the actual value of the stock of the Castle Realty Co., Inc., and the amount paid to the estate therefor, was properly taxed to the recipients of the said stock. (*Matter of Cory*, 177 App. Div. 871; 221 N. Y. 612; *Matter of Orvis*, 223 N. Y. 1; *Matter of*

*Hellman,* 172 N. Y. Supp. 671; 187 App. Div. 934; 226 N. Y. 702.)

CRANE, J.  The parties to this proceeding stipulated in writing as follows:  " That the only question submitted to the Appellate Division of the Supreme Court for review is whether the transfer of the corporate stock of Castle Realty Company, Inc., to Maurice Fieux and Ernest D. Fieux by virtue of the memorandum of Agreement dated July 3, 1918, copy of which is a part of the papers herein, is taxable under the statutes of New York regarding taxable transfers."

The memorandum agreement referred to was executed by the five stockholders of the Castle Realty Company, Inc., a domestic corporation.  They were Louis Runkel, Maurice Fieux, Sigismund L. Fieux, Ernest D. Fieux and Albert Runkel.  Each of these stockholders mutually agreed not to dispose of his stock, and further covenanted that on the severance of his connection with the corporation, or at his death, the other parties could purchase his stock at par.  The agreement in this part reads as follows:

" The party of the first part herewith grants and gives to the parties of the second, third, fourth and fifth parts jointly or severally, the absolute and irrevocable right, privilege and option at any time within a period of five years from the date of the resignation of the party of the first part as an officer of said corporation and severance of his connection with said corporation or with Runkel Brothers, Inc., for whatsoever cause or reason, whether through his act or the act of the company, to purchase from him, or in the event of his death, to purchase from his personal representatives or legatees during a period of five years after the death of said party of the first part, the whole or any number of shares of Castle Realty Company, Inc., which the said party of the first part now owns or which he may hereafter acquire, and during

the life of the option herewith granted, the said party of the first part agrees that he will not directly or indirectly dispose of any of the said stock, but hold the same intact to the end that the parties of the second, third, fourth and fifth parts jointly or severally may have an opportunity during the aforesaid period of five years subsequent to either his severance of connection with said corporation or with Runkel Brothers, Inc., or his death, of taking advantage of the said option and exercising the same."

Each of the parties made a like covenant and agreement. The five were, therefore, mutually bound by an irrevocable contract entered into upon good and valuable consideration to do two things; not to dispose of any of his stock, but to hold it intact for the benefit of the other four parties, and second, to sell his stock at par to his associates at their election on his severance of his connection with the corporation by voluntary act or by his death.

This was not a transfer, agreement or deed made in contemplation of death, or to take effect at death. The agreement and its binding, irrevocable obligations took effect the third day of July, 1918. The right to purchase the stock at par could take effect in the lifetime of the parties as well as at death. Resignation from the corporation, or death, merely marked the time when the right of purchase could be exercised.

In this respect, the agreement is not a taxable transfer within section 220 of chapter 62 of the Laws of 1909, as amended by chapter 430 of the Laws of 1922, even if such amendment could affect rights vested under a previous contract, which we do not hold.

Sigismund L. Fieux died on the twentieth day of June, 1923, owner of 81 shares of stock of the Castle Realty Company, Inc. Maurice Fieux and Ernest D. Fieux, his brother, exercised the option to purchase the aforesaid stock at $100 per share, and paid to the estate of the

decedent the sum of $8,100. The appraiser found that the stock of the corporation was of the value of $200.50 per share, which left a balance of the valuation over the amount paid to the estate of $8,140.50, which has been assessed and taxed as a taxable transfer.

The Tax Law above referred to, so far as applicable to this case, reaches the following:

" When the transfer is of property made by a resident, * * * and is made by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor or intended to take effect in possession or enjoyment at or after such death, * * * If any one of the foregoing transfers is made for a valuable consideration, the portion of the transfer for which the grantor or vendor receives equivalent monetary value is not taxable, but the remaining portion thereof is taxable."

The bargain, or the gift, to come within this Tax Law, must have been made in contemplation of death, or intended to take effect in possession or enjoyment after such death. The last sentence added by the amendment of 1922 taxing the remaining portion of the property over and above the consideration received by the estate is likewise limited to such agreements made in contemplation of or to take effect at death.

This agreement made by the five stockholders of the Castle Realty Company, Inc., on July 3, 1918, was not a bargain made in contemplation of the death of Sigismund L. Fieux, or intended to take effect in possession or enjoyment at or after such death. The bargain became binding and took effect at once on the date of its execution. It was irrevocable; it obligated the signer to hold his stock, and not sell or dispose of it. If he resigned from the corporation, he was compelled to sell his stock at par to the other parties to the contract, if they so elected. This agreement, therefore, was not one made in contemplation of Fieux's death, but in contemplation of his withdrawal from the corporation, either by resignation or

death. Death was an incident of the contract, a means whereby Fieux would sever his connection from the corporation. It was the event of this withdrawal from the combined business activities of the parties that gave occasion for the exercise of the contracted right. The sale of the stock was as binding upon Sigismund L. Fieux in his lifetime as upon his estate after his death. Death, like the resignation, created no rights; it merely marked the time when previously created rights and obligations could be enforced.

In this respect this case is in line with *Matter of Cole* (235 N. Y. 48); *Matter of Baker* (83 App. Div. 530; 178 N. Y. 575) and is distinguishable for the same reason from *Matter of Cory* (177 App. Div. 871; 221 N. Y. 612) and *Matter of Orvis* (223 N. Y. 1). In the *Cory* case there was no requirement on the part of either party to retain ownership of the stock. The owner might sell it and thus terminate the agreement. Until one of the parties died, the contract remained wholly executory. So in the *Orvis* case there was no provision for the upkeep of the funds, no requirement that the partnership could continue up to the date of death, and nothing to prevent the total extinguishment of the subject-matter of the agreement, prior to the death of either party.

In the case before us, Sigismund L. Fieux was held in his lifetime to keep his stock, and not sell it except to his associates. The agreement was as binding upon him in case of his resignation from the corporation as upon his estate in case of his death. It is the nature of the agreement, its intent and purpose which must determine its classification, and whether or not it amounts to a taxable transfer. This is what we said in the *Orvis* case (p. 7) and still remains applicable to the amendment of 1922. " It was intended to tax all transfers which are accomplished by will, the intestate laws of this State, and those made or incepted prior to the death of the

transferor in contemplation of or intended to take effect in possession or enjoyment after his death which are in their nature and character instruments or sources of bounty or benefaction and which can be classed as similar in nature and effect with transfers by wills or the intestate laws, because they accomplish a transfer of property, donative in effect, under circumstances which impress on it the characteristics of a disposition made at the time of the transferor's death. In all cases in which the value of the consideration for the property transferred, under the statutory conditions, is so disproportionately less than the value of the property transferred that the transfer is, in the light of reason or of ordinary intelligence and judgment, beneficent and donative, the transfer is taxable."

Fieux's agreement was not made on such a consideration as to evidence an attempt to evade the Tax Law. The promises were mutual. Ever since it was made on July 3, 1918, the four survivors connected with the corporation have been unable to sell or transfer their stock. Up to the time of his death on June 20, 1923, each was obliged to hold his stock subject to Sigismund's right of purchase. The evidence shows that the stock was worth twice its par value and might have been disposed of in the market at a profit, yet the stockholders were obligated not to sell. How can an appraiser value this relinquishment of the right of sale, or at least say that it had no value?

For the reasons here stated, we determine that the purchase made under the agreement of July 3, 1918, was not a taxable transfer, and that the order of the Appellate Division and decree of the surrogate should be reversed, with costs in all courts and the proceeding remitted to the Surrogate's Court for further proceedings in accordance with this opinion.

HISCOCK, Ch. J., CARDOZO and LEHMAN, JJ., concur; POUND, MCLAUGHLIN and ANDREWS, JJ., dissent.

Ordered accordingly.