Carl A. Hassel, Respondent, *v.* Richard C. Pohle and Others, Appellants, Impleaded with Mount Vernon Die Casting Corporation and Others, Defendants.

Second Department, December 4, 1925.

Corporations — shares — restriction in by-laws on transfer which gave corporation right to purchase any stock offered for sale — restriction printed on certificates — appellants, for purpose of controlling corporation and with knowledge of restriction, purchased stock in question which had not been first offered to corporation — stockholder has right to have sale set aside.

A stockholder of a corporation the by-laws of which provide that the shares of stock shall not be transferred by any stockholder until they are first offered to the corporation, which provision is printed on the certificates of shares issued by the corporation, has the right to have the sale of shares made to the appellants set aside, where it appears that the shares so purchased by the appellants were purchased without said shares being offered by the owner to the corporation prior to the purchase by the appellants, and where it appears that the appellants who were former directors of the corporation knew about the restriction and made the purchase for the avowed purpose of securing control of the corporation.

Appeal by the defendants, Richard C. Pohle and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 11th day of April, 1925, upon the decision of the court rendered after a trial at the Westchester Special Term.

The judgment enjoins the appellants from voting certain shares of corporate stock standing in their names at all stockholders' meetings of the Mount Vernon Die Casting Corporation, and decrees that said defendants acquired no rights or title to the stock in question and that the transfers of said stock to them were null and void.

*Morris Hillquit*, for the appellants.

*Joseph E. Cavanaugh*, for the respondent.

Kelly, P. J.:

The defendant corporation made no answer to the complaint of the plaintiff incorporator and stockholder and consented to the entry of the judgment. It appears from the record that the board of directors disapproved of the transactions of the defendants Pohle and Nyselius, the president and secretary of the company, in attempting surreptitiously to obtain control of the company, and that they were removed from office by their fellow-directors.

The persons from whom Pohle and Nyselius obtained the ninety-five shares of stock involved in the action were originally made parties defendant, but they were not served with process and their names were stricken out as parties defendant without objection. No point is made as to the effect of the judgment as to them, and as they are not parties to the litigation the matter is not before the court.

My conclusion on the question presented on this appeal, viz., whether the restriction on the right of the stockholder to dispose of his stock evidenced by the original and amended by-law, is valid, is that the learned justice at Special Term was right in his conclusion, that the acceptance of the stock by Pohle and Nyselius with knowledge of the by-law printed on the face of the stock certificate estopped them from questioning its validity. They agreed with their fellow-incorporators that before selling the stock they would offer it to the corporation, that the corporation had an option to buy it or refuse to exercise the option. I think the two defendants, officers of the corporation and holding fiduciary relations with their fellow-stockholders, cannot be heard to say that the corporation was in no financial condition to buy the stock, or that in other instances stock had been transferred without any offer to sell to the corporation. The obvious agreement of the incorporators was that before selling, before bringing in new associates in the enterprise, the stockholders should bring the matter to the attention of the board of directors. If, for valid reasons, they preferred to keep their association intact without introducing new elements, it was up to them to buy the stock. If there were no available funds in the treasury, it was up to them to furnish the money. I do not think the individual stockholder holding his stock subject to the agreement, can say that the corporation had no money with which to purchase the stock.

And the statement that stock had been transferred without offer to the corporation, and that the corporation had recognized such transfers so that the restriction had become a dead letter, is not borne out by the evidence. The new president, Lundin, testifies as to the method of doing business: " Q. Now, on the transfers of the stock certificates what has been the custom of the company during the time that you have been connected with it since its organization and up to January 31st, 1924, with reference to transfers? A. Why, if any one desired to dispose of his stock he offered the same to the company, and the thing has been discussed, and if the company has not been any too well financially or in good financial condition, why, the party has been advised to find some other ways and means to dispose of them. And in some instances, I cannot recall how many, the company has bought the stock." It

is very apparent that these ordinary transactions referred to by the witness had no resemblance to a deliberate plan or conspiracy by the president and secretary to obtain control of the stock by transfers without notice to the board of directors.

Both parties seem to agree that there is nothing in the certificate of incorporation of the company providing for restrictions on the right of the stockholders to sell and transfer their stock. The certificate of incorporation is not printed. The company is said to have been incorporated under the Business Corporations Law. That law in prescribing the contents of a certificate of incorporation (§ 2) contains no reference to restrictions on the right to transfer stock. They are not mentioned one way or the other. But restrictions, qualifications, privileges, etc., connected with the ownership of capital stock in corporations, are not against the public policy of the State and are not unknown to the law. The law expressly recognizes restrictions (Stock Corp. Law, § 5, subd. 4; Id. § 11, as amd. by Laws of 1924, chap. 441), and provides that such restrictions shall be stated on the certificate (Id. § 65).

All of the incorporators immediately on the formation of the corporation adopted the original by-law providing for an opportunity to be given to the corporation to purchase, emphasized in the amendment to the by-law. The original agreement was joined in by every one interested, it was stamped on the face of the certificate. The limitation on the absolute right to transfer was continued in the amended by-law, and although the corporation did not go to the trouble and expense of having new certificates printed, with the substituted by-law on their face, every one concerned knew all about the agreement and the by-law. Pohle and Nyselius knew all about it and their relatives knew all about it, as found by the court.

In the case of *Blue Mountain Forest Association* v. *Borrowe* (71 N. H. 69) the late Austin Corbin had incorporated the plaintiff association to take over a game preserve at Croydon, N. H., where he was born, dividing the stock among his wife and children with restrictions against sale to outsiders without the consent of the other stockholders. The restrictive provision in that case was placed in the certificate of incorporation and also in the by-laws. It was sustained in the Supreme Court of New Hampshire, and the opinion of Mr. Justice WALKER is interesting and instructive. He held that the restriction was in effect a contract between the stockholders. In *Longyear* v. *Hardman* (219 Mass. 405) the Supreme Court of Massachusetts had the validity of such restrictions before it. In that case also the restrictive provision was in the articles of association. Chief Justice RUGG, writing for the court, said such

restriction was not contrary to public policy, and that in the absence of any definite limitation the incorporators were given " considerable latitude," that the restrictions should not be declared unlawful unless they were " palpably unreasonable." He said: "A corporation bears some resemblance to a partnership. Plainly no new partner can be introduced into a partnership without the assent of all the partners. Said Chief Justice HOLMES in *Barrett* v. *King* (181 Mass. 476, at page 479), when discussing a somewhat similar proposition: ' Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership. * * * There seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm.' The motives for the retention of such right in a small business corporation, where substantial changes in ownership of stock well might be accompanied by a change of managing officers, are obvious." And at page 409: " The certificate of stock contains reference to the by-law enacted in pursuance of the clause in the agreement of association. It becomes in substance and effect a part of its charter. The owners of stock in a corporation thus organized cannot complain of such a congenital characteristic. Each stockholder takes his stock subject to this restraining condition. The establishment of valid restrictions upon sales of pews bears some analogy to the case at bar. [Citing cases.] That there is nothing inherently unconscionable in such a limitation upon the right of transfer is manifest from the very broad power exercised by organizers of companies under the English acts and in some of our States." In *Ripin* v. *U. S. Woven Label Co.* (205 N. Y. 442, 447), Chief Judge CULLEN referring to the Business Corporations Law of the State said: " Under this statute many businesses or private enterprises which formerly had been conducted by partnerships or individuals, became the subject of corporate control and ownership." He said in that case that under the General Corporation Law (§ 11) the power to enact by-laws was limited to such as are " not inconsistent with any existing law." He said that a by-law inconsistent with the statute regulating the affairs of corporations would allow a majority to invade the rights of a minority and to impose limitations on a stockholder to which he never gave his assent.

I think this is not at variance with Mr. Justice TOMPKINS' conclusions in the case at bar. The by-law in the case at bar is not inconsistent with the statute. It seems to me that in the end it gets down to a matter of contract. Did the defendants make a contract, not illegal or against public policy? When I say *defendants*

42

I mean Pohle and Nyselius, because as matter of fact the other defendants are merely " dummies " for Pohle and Nyselius. If they made the contract, it seems to me they should live up to it and this aside from the duty they owed their fellow-stockholders as president and secretary of the company. For its violation the other parties to the agreement could resort to such remedy as the law affords upon the breach of a contract by either party. (*Matter of Argus Co.*, 138 N. Y. 557, 572.) *Cowles v. Cowles Realty Co.* (201 App. Div. 460) was a case involving real property at Rye, Westchester county, where defendant company was organized to take and hold real and personal property bequeathed to the three sons of Sarah Cowles. Apparently there was nothing in the certificate of incorporation affecting the transferability of the stock, but on the formation of the company the stockholders, three in number, adopted a by-law providing that before selling the stock, a stockholder should offer the shares to the company. The plaintiff contended that the by-law was in effect a contract, and that each incorporator in voting for it changed his position with reference to his stock holdings. The defendants contended that the by-law was not a contract and could be repealed by a majority vote of the corporation. Mr. Justice MERRELL, writing for the court, held that the by-law adopted by unanimous vote of the incorporators was in effect a contract and that it could not be repealed by the majority under the general power given corporations to alter, amend or repeal by-laws. He said (p. 465): " no private corporation can repeal a by-law so as to impair rights which have been given and become vested by virtue of the by-law afterwards repealed." In the case at bar the defendants without any alteration of the original by-law and the amended by-law, but in distinct violation of its provisions, are attempting for their private gain to violate the rights of their fellow-stockholders. In *Kent v. Quicksilver Mining Co.* (78 N. Y. 159) Judge FOLGER said (p. 179) of a by-law, that " it was as much the law of the corporation as if its provisions had been a part of the charter. [Citing *Presbyterian Church v. City of N. Y.*, 5 Cow. 538.] * * * The by-law entered into the compact between the corporation and every taker of a share; it was in the nature of a contract between them." Back in 1896 this court had before it a case (*Reynolds v. Bank of Mt. Vernon*, 6 App. Div. 62; affd., 158 N. Y. 740), where it was attempted to restrict the sale of stock by limitations stamped on the certificates by action of the directors, without authority in the certificate of incorporation or in any by-law. Mr. Justice CULLEN, writing for the court, said that without authority in the certificate or a by-law the directors could not so restrict the transfer of the shares. He said

that by lapse of time, and course of dealing, the stockholders might acquiesce and ratify the restriction. That is not the case here. Here there was a definite agreement, a by-law printed on the face of the certificate, and, so far as any formal corporate action was concerned, recognized down to the time the defendants with full knowledge of the facts sought to disregard it.

I think upon the facts disclosed in the record in the case at bar that the plaintiff was entitled to the judgment declaring void the attempt of the officers of the association to acquire control of the stock in violation of their agreement.

The judgment should be affirmed, with costs.

Present — KELLY, P. J., RICH, JAYCOX, KELBY and YOUNG, JJ.

Judgment unanimously affirmed, with costs.