*519 OPINION.
Muedook:
At the hearing and in his brief counsel" for the petitioner mentioned some contention in regard to the executor’s demand for determination of the amount of tax and discharge from personal liability therefor in accordance with section 407 of the Revenue Act of 1921, but since no such issue was raised by the pleadings, we will dismiss the matter without further discussion.
The respondent in his answer denied that his letter of August 8, 1925, was a deficiency letter and alleged that since the enactment of the Revenue Act of 1924, there has been no determination of a deficiency within the meaning of that Act, and that consequently this Board had no jurisdiction in the case. The respondent did not refer to this contention in his oral argument or in his brief. We can see no merit in his position and we are satisfied that we have jurisdiction.
There is one issue to be decided on its merits. The respondent contends that the estate of the decedent had a right to the $254,510.17 which it eventually received, which right -it could have enforced, and that- consequently the amount was properly included in the gross estate by authority of section 402 (a) of the Revenue Act of 1921. If this contention should prove unsound he then contends that the amount was properly included in the gross estate in accordance with section 402 (c), inasmuch as the decedent made a transfer of the amount to the Centaur Company without a fair consideration in contemplation of or intended to take effect in possession or enjoyment at or after his death.
We shall discuss the alternative contention first. It seems wholly without merit. The contract which alone could have made the transfer was entered into on November 24, 1917. It supplanted another similar contract dated 1912, and the letter was not the first of the kind between the parties. A witness who had been with the com *520 pany for many years and who knew the deceased stated that he had always understood that the peculiar terms were inserted in these contracts following the death of a profit-sharing officer in 1904, at which time the heirs or representatives of that deceased officer had given the company considerable annoyance by insisting upon their right to examine into the profits of the company, as disclosed in its books. Under the circumstances it does not appear that Fletcher did what he did prompted by the apprehension of death within the reasonably near future, arising from some existing bodily condition. Appeal of Hannah M. Spofford, Administratrix, 3 B. T. A. 1016.
Furthermore, in our opinion, the deceased never transferred anything to the Centaur Company by the contract. The money which was undrawn'never became his and certainly in 1917, when he signed the contract, he transferred no right or property which he then had or owned. The contract has been the subject of a suit in the State of New York, and the learned court which decided the case, in reaching the same conclusion as we have reached, discussed this point at length. See In re Fletcher’s Estate, 219 N. Y. S. 239; and see also the decision of the New York Court of Appeals In re Fieux’s Estate, 241 N. Y. 277; 149 N. E. 857.
We fail to see, in the evidence before us, any reason for holding that all or a part of the undrawn salary was transferred as a part of the decedent’s estate at his death, or that it was subject to the payment of charges against his estate or to distribution as a part of his estate. The weight of the evidence is the other way.
The petitioner introduced a contract and some evidence that there was no other. Thus he made a prima facie case, at least. Another contract between Fletcher and the stockholders of the Centaur Company was mentioned by a witness and some such contract is also referred to in the letter written by the company to the executors dated July 27, 1922, and in the final release. But so far as we know such contract or contracts does or do not affect the question before us. If Fletcher agreed that money could be set aside for the payment of income taxes, how could he or his estate be heard to complain if money was so set aside? Was such a plan not within his contemplation when he signed the employment contract? Also did he not know when he signed this latter contract that it would take some months after the close of a year to determine and to draw his share of the profits ? The mere fact that he was not derelict in drawing his share would not move a court to enforce the payment to his estate of the portion which he had not drawn. It does not appear that the com-panjr ever did anything against Fletcher’s wishes or without his consent.
*521 The respondent relies upon the fact that a release was demanded and given, and upon the admission of counsel for the petitioner that the executors made some sort of a demand upon the company, to show that the estate really had a right to receive all or a part of this money from the company either as undrawn salary, or for the use of Fletcher’s name. This does not seem logical. The assertion of an alleged right does not establish any right. The fact that a release was demanded, given, and received does not seem unusual or inconsistent with the petitioner’s contention, and certainly it is inconclusive. Suppose the act of the corporation giving the undrawn salary to the Fletchers was ultra vires, does that fact subject the money to an estate tax?
The evidence does not justify us in going beyond the plain terms of the contract, and our judgment must be for the petitioner, because by the terms of the contract this estate got nothing. The amount in question was not a part of the estate transferred on the death of the owner. Y. M. C. A. v. Davis, 264 U. S. 47.
Reviewed by the Board.

Judgment will be entered on notice of 15 days, under Rule 50.