## WILSON et al. v. BOWERS.

District Court S. D. New York.
June 26, 1931.

Taylor, Blanc, Capron & Marsh, of New York City (Russell L. Bradford, and Edwin E. Peterson, both of New York City, of counsel), for plaintiffs.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

There must be a judgment for the plaintiff herein for $3,039, with interest from July 14, 1922, as demanded, and an order for judgment accordingly may be entered.

The defendant's motion for judgment of dismissal is, therefore, denied.

I. The complaint in this case was filed on July 13, 1926, and alleged that on the 21st day of May, 1909, a contract was entered into between the decedent Arthur R. Wilson, Franklin H. Wilson, and Edgar H. Betts which provided, inter alia, as follows:

"First: Before Arthur R. Wilson sell or assign or transfer his stock to any other party, he shall make a written offer of his said stock to Franklin H. Wilson at $6.66-2/3 per share payable within four months from the date of the receipt of said offer, and if within said four months said Franklin H. Wilson does not accept and pay for said stock then at the expiration of said four months the said Arthur R. Wilson shall make a written offer of his said stock to Edgar H. Betts at $6.66-2/3 per share payable within a second period of four months from the date of the receipt of said second offer, and the said Arthur R. Wilson shall not sell, assign or transfer said stock to any other party unless within said second period of four months said Edgar H. Betts fails to accept and pay for said stock.

"Second: Upon the death of said Arthur R. Wilson said Franklin H. Wilson shall have the right for four months after the qualification of the Executors or Administrators of said deceased to purchase from the estate of Arthur R. Wilson all of said shares of stock formerly property of Arthur R. Wilson at said price of $6.66-2/3 per share, and in the event of said right not being exercised within said period of four months by said Franklin H. Wilson then said Edgar H. Betts, for a period of four months next ensuing after the expiration of said first four months, during which said Franklin H. Wilson had the right to purchase said stock, shall have the right to purchase all of said stock formerly property of said Arthur R. Wilson at said price of $6.66-2/3 per share."

The answer to this complaint was filed by the government on December 7, 1926, but withdrawn, and a motion to dismiss the complaint was substituted by agreement therefor.

There was also a stipulation between the parties to the effect that, for the purpose of the determination of the tax on the estate of Arthur H. Wilson under title 4, of the Revenue Act of 1918, the value of the 3,000 shares of the capital stock of the Earl & Wilson Company owned by Arthur R. Wilson was $23.55 a share at the time of his death, unless the agreement above referred to, attached to the complaint, determined the value for the purpose of their tax at $6.66⅔ per share, in which event the tax already paid on the basis of that valuation was the true and proper tax due and payable by the estate of Arthur R. Wilson.

II. In the year 1909, Arthur R. Wilson, deceased, Franklin H. Wilson, and Edgar H. Betts, as executors, plaintiffs herein, were partners in the firm of Earl & Wilson.

Desiring to combine the dilectus personarum of their then partnership with the advantages of a corporate organization, they formed a corporation, the Earl & Wilson Company, parceled out the stock among them, and entered into a contract among themselves with regard to the stock of the corporation. The portions of the contract relevant on these motions are given above.

The former partners operated under corporate organization without change in their organization, or their contract, until 1921, when Arthur R. Wilson died leaving a will in which he bequeathed his share of the stock of the corporation to Franklin H. Wilson.

Under the provisions of title 4, §§ 401 and 402, of the Revenue Act of 1918 (40 Stat. 1096, 1097), the United States assessed a federal estate tax against the estate of Arthur R. Wilson, claiming that the value of the stock owned by Arthur R. Wilson and left by him to Franklin H. Wilson was $23.55 a share.

At the time of his death, Arthur R. Wilson owned 3,000 shares of the common stock of the Earl & Wilson Company, and the executors claimed that the value of these shares, owing to the agreement aforesaid, was $20,000.

The Commissioner of Internal Revenue, however, fixed the value of these 3,000 shares at $70,650, and assessed an additional estate tax of $3,039 against the estate.

This is the subject-matter of the present action, and was paid under appropriate reservation in the event of its recovery if the assessment by the government was wrong.

III. In effect, what happened was that Arthur R. Wilson left to Franklin H. Wilson his share of their common business.

If he had not left the 3,000 shares of stock which he owned to Franklin H. Wilson, the latter would have had the right, within four months after the qualification of the executors of Arthur R. Wilson, to have purchased the stock from the estate for the sum of $20,000; that is, at $6.66⅔ per share.

This right could have been enforced in equity. See Scruggs v. Cotterill, 67 App. Div. 583, 73 N. Y. S. 882; Matter of Fieux, 241 N. Y. 277, 281, 283, 149 N. E. 857.

IV. The relevant statutes are as follows:

"Sec. 401. That (in lieu of the tax imposed by Title II of the Revenue Act of 1916, as amended, and in lieu of the tax imposed by Title IX of the Revenue Act of 1917) a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States: * * *

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate. * * *"
40 Stat. 1096, 1097.

The first point made by the plaintiffs is that the 3,000 shares of stock subject to the Franklin H. Wilson option, and also to the residual option of Edgar H. Betts under the terms of the contract, was not an asset of Arthur R. Wilson's estate beyond the amount provided for by the option because

(1) it was not subject to the payment of charges against his estate.

(2) It was not subject to the expenses of its administration.

(3) It was not subject to distribution as part of his estate.

The case of Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156, is cited as

supporting the position that, in view of the situation here, the additional estate tax could not properly be assessed against these 3,000 shares of stock in the Earl & Wilson Company under discussion.

In the Harrelson Case, a provision of the Missouri law exempted real property situated in that state from the expense of administration, and the Court, consequently, held that the value of the real property was not subject to the federal estate tax.

I think the contract enforceable in equity by Franklin H. Wilson and, failing enforcement by him, by Edgar H. Betts, brings this estate within the scope of the decision in Crooks v. Harrelson, unless the government were able to establish that Franklin H. Wilson and Edgar H. Betts had both refused to exercise their options.

It was not, however, necessary for Franklin H. Wilson to exercise any option, because he received the shares while still subject ·to his option from the estate, and, as he accepted the legacy, the opportunity for Edgar H. Betts to exercise any option lapsed.

But even if this point of view is wrong, I think that the reasoning of the Court of Appeals of New York in the Matter of Fieux, 241 N. Y. 277, 149 N. E. 857, effectually disposes of the case in favor of the plaintiffs.

V. When the situation is analyzed further, it. seems to me quite clear that what really happened in this case was that the executors of Arthur R. Wilson's estate took his 3,000 shares of stock in the Earl & Wilson Company cum onere, that is, with the burden of the successive options of Franklin H. Wilson and Edgar H. Betts, and that, consequently, at the time of his death the value of those shares of his estate was not any greater than the value fixed by these options, which were irrevocable so far as the estate was concerned.

It is quite true that subsequent events, that is, the failure both of Franklin H. Wilson and Edgar H. Betts to exercise their options, might have resulted in an increased value to the estate of the 3,000 shares; but that could not have been determined until the period during which the options were exercisable had lapsed; that is, for a period of eight months after the qualification of his executors.

The value of an estate for the purpose of inheritance taxation is determinable as of the date of decedent's death, and I think, therefore, that as of the date of decedent's death, there is not any question but that the value of the stock was limited to the amount payable by Franklin H. Wilson or by Edgar H. Betts, as decedent's associates in the event of their exercising the binding option of the contract of 1909.

VI. The fact that Franklin H. Wilson was the legatee of these 3,000 shares, as well as the person who had the first option, is merely a coincidence which does not affect the legal rights of the government in the situation, for an agreement of such a kind as this is not subject to attack on the ground that it is made in contemplation of death. As Judge Crane said of a similar agreement in the Matter of Fieux, 241 N. Y. 277, at page 280, 149 N. E. 857: "Each of the parties made a like covenant and agreement. The five were therefore mutually bound by an irrevocable contract entered into upon good and valuable consideration to do two things—not to dispose of any of his stock, but to hold it intact for the benefit of the other four parties, and, second, to sell his stock at par to his associates at their election on his severance of his connection with the corporation by voluntary act or by his death."

In that case, to be sure, the option was exercised. The principle laid down, however, there, as here, is that a binding option on stock of such a kind as is here involved, being enforceable in equity, is a burden on the stock which reduces its value at the death of its owner to the amount which has to be paid under the option.

Settle order for judgment in favor of the plaintiffs on two days' notice.