[Seal]     George B. McGinty, Secretary.

LOMB v. SUGDEN, Collector of Internal Revenue.

No. 1041–A.

District Court, W. D. New York.
July 16, 1935.

Hubbell, Taylor, Goodwin, Nixon & Hargrave, of Rochester, N. Y. (Lewis Clinton, of Rochester, N. Y., of counsel), for plaintiff.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Joseph Doran, of Rochester, N. Y., of counsel), for defendant.

RIPPEY, District Judge.

Carrie B. Lomb died October 3, 1929, a resident of Rochester and citizen of the United States, leaving a last will and testament in which Carl F. Lomb was named executor. Mr. Lomb qualified on October 10, 1929, and is still acting as executor.

The executor filed a federal estate tax return under the Revenue Laws of 1926 on August 14, 1930, with the collector for the Twenty-eighth collection district of New York, which showed a gross estate of $473,807.34, and a net estate for tax purposes of $310,685.92. The executor paid the tax liability of $1,785.49 as disclosed by said return and a later assessment of a deficiency tax of $23.22.

The controversy here centers around the question of the proper valuation to be fixed on 1,500 shares of the capital stock of the Bausch & Lomb Optical Company, a corporation organized and existing under the laws of the state of New York, with principal place of business in Rochester, N. Y. This stock was appraised in the return at $69.445 per share.

Under the will of Mrs. Lomb, Carl F. Lomb, her husband, who is named executor therein and who was also a signer of the agreement hereinafter referred to, was the sole residuary legatee and, as such, received the stock in question upon the death of Mrs. Lomb.

The Bausch & Lomb Optical Company was a close corporation. The common stock of the corporation consisted of 60,000 shares of the par value of $100 each. The owners of all of the common stock entered into an agreement in writing, dated May 16, 1928, the pertinent parts of which are as follows:

"Now, therefore, in consideration of the premises, of the provisions hereof to be kept and performed by the respective parties, and of the sum of One Dollar ($1.00), which each party hereby agrees to pay to each of the others, the said undersigned do hereby covenant and agree with each other as follows: * * *

"Second: That none of the undersigned parties hereto will sell or dispose of any of his or her shares of the common stock of said Bausch & Lomb Optical Company, whether now owned or hereafter acquired, to any other person or party not a party to this agreement, without first offering to sell the same to all the other common stockholders of said Company who are parties hereto. If any of the undersigned shall desire to sell or dispose of any or all of his or her shares of common stock of said Company, the other undersigned stockholders, or such of them as desire to do so, shall have the right to purchase such common shares in proportion to their then respective common stockholdings, at a price per share ten (10) times the average annual net earnings per share of the Bausch & Lomb Optical Company during the five (5) business or fiscal years next preceding such sale, as such average annual net earnings are shown by the account books, inventory books and balance sheets of the Bausch & Lomb Optical Company during those years, provided that such price shall at no time be less than fifty (50) per cent., nor more than one hundred (100) per cent. of book value of such stock as shown by the annual statement of the Bausch & Lomb Optical Company for the business or fiscal year next preceding such sale. Any undersigned stockholder so desiring to sell or dispose of any or all of his or her said common stockholdings shall notify all the other undersigned stockholders thereof in writing. Within ninety (90) days after the receipt of such written notice by such other stockholders, they, or such of them as desire to purchase the common stock offered, shall in writing signify their election so to do. Whenever any such sale occurs hereunder, unless other terms may be agreed upon, one-third (⅓) of the purchase price shall be paid at the time of the sale; one-third (⅓) six months thereafter, and the remaining one-third (⅓) one year thereafter, with interest on the deferred payments at the rate of five (5) per cent. per annum; but the purchaser shall have the right to pay the whole purchase price at the time of the purchase, or at any

subsequent time, with interest at five (5) per cent. to the time of payment. If the undersigned stockholders having the right to purchase shares of another stockholder hereunder neglect or refuse to make such purchase within said ninety days, then the stockholder desiring to sell or dispose of his or her common stock shall be entitled to sell to any purchaser he can find. Any undersigned stockholder may, notwithstanding the provisions of this paragraph hereof, give and transfer any or all of his or her shares of such common stock to any or all of the other undersigned stockholders in such manner and in such amounts or proportions as to him or her seems proper.

"Third: That in the event of the death of any one of the undersigned stockholders, without leaving lawful issue him or her surviving, the other stockholders, parties hereto, shall be entitled to purchase all the common shares of said Bausch & Lomb Optical Company held by the stockholder so dying, at the same price and terms, in all respects, as is provided for the sale and purchase of the shares of a stockholder desiring to sell under the last previous paragraph hereof, provided that any undersigned stockholder, dying without issue, may by will or other instrument to become effective at his or her death, give any or all of his or her shares of such common stock to any or all of the other undersigned stockholders in such manner and in such amounts or proportions as to him or her seems proper, and may also by like method give not to exceed ten (10) per cent. of his or her shares to an outside party or parties. In the event of the neglect or refusal of the undersigned stockholders having the right to purchase under this paragraph to make such purchase, then the heirs, executors and administrators of the stockholder so dying may dispose of the shares of common stock held by him or her in the same manner as is provided for the disposition of shares under the last preceding paragraph in case of the neglect or refusal of stockholders having the right to purchase thereunder to make such purchase.

"Fourth: That this agreement shall apply to and bind the heirs, executors and administrators of the respective parties."

The valuation of $69.445 per share fixed as the value of the stock in the return was computed according to the formula set out in the foregoing agreement, it being claimed by the executor that the agreement was binding for the purposes of fixing the tax upon the Collector of Internal Revenue. The record establishes that the total book value of the stock was $8,233,404, or $138.89 per share. The average yearly net earnings of the corporation for the years 1924 to 1928, inclusive, was $911,734.19, or $30.391 per share. The executor thereupon fixed a value as above indicated, which is 50 per cent. of the book value of the stock.

Section 302(a) of the Revenue Act of 1926, 26 USCA § 1094(a), the provisions of which are applicable in the case at bar, provides that the value of the gross estate shall include all property of the deceased at the time of her death to the extent of her interests therein. Regulation 70, art. 13, subd. 3, so far as pertinent, reads as follows:

"Stock in a close corporation should be valued upon the basis of the company's net worth, earning and dividend-paying capacity, and all other factors having a bearing upon the value of the stock. Complete financial and other data upon which the estate bases its valuation should be submitted in duplicate with the return."

"Where as to any particular security conditions of sale or ownership are such that the fair market value, determined as already indicated, would not afford a proper basis for valuation, the Commissioner, on final audit, will establish the value by considering all relevant factors. In any case where the estate contends that the value, if established by the general rules already given, is not the fair market value as of the date of death the evidence upon which it bases its contention should be filed with the return."

The Bausch & Lomb Optical Company stock was not listed upon any stock exchange, was not dealt in actively, and it had no active market. There was no evidence in the record of any sales of the stock. It was therefore the Commissioner's duty, on final audit, to determine what the value of this stock was, taking into consideration all evidence material to that question. The agreement above referred to was merely evidence in the hands of the Commissioner for his consideration on the subject of value. It was not conclusive. Its weight depended upon numerous factors and was to be determined by the Commissioner. That was the effect given to it when the Commissioner, upon making

the final audit here, took into consideration the company's net worth, its earning and dividend-paying capacity, and all the other facts having a bearing upon its value, and fixed its fair market value as of the date of the death of Mrs. Lomb at $100 per share.

■ Upon the Commissioner's finally fixing the valuation at $100 per share, the executor paid the additional tax on August 6, 1932. On September 8, 1932, plaintiff filed a claim for refund, which claim was denied on November 8, 1932. If the agreement above mentioned was conclusive on the Commissioner, the stock must be valued at the amount and by the method provided therein; otherwise, the determination of the Commissioner is presumptively correct. The burden of establishing the incorrectness of his determination, in any event, was upon the executor.

According to the evidence presented by the executor, and it must be found herein as a fact, Carrie B. Lomb, the deceased, was the owner and in possession of the 1,500 shares of stock at the time of her death and it passed directly to Carl Lomb under the residuary clause of her will. There was sufficient other property in the estate so that it was unnecessary for the executor to convert this stock into cash and use it for the payment of the debts and funeral expenses of Mrs. Lomb or for the cost of administering her estate, or for the payment of specific legacies. There is no evidence before the court that any notice was printed upon the certificates to the effect that there was an agreement outstanding restricting the sale of the stock, nor is there any evidence in the case that the certificates contained any reference to such an agreement. As before indicated, the burden was upon the executor to show that fact, if it were a fact, and in the absence of evidence it must be held as a fact that the stock certificates contained no such notice. Whether there was or was not such a notice attached to the stock certificates is not decisive of this case, as will be hereinafter pointed out.

■ A share of stock is a right which its owner has in the management, profits, and ultimate assets of the corporation. Van Allen v. Assessors, 3 Wall. 573, 585, 18 L. Ed. 229. A stock certificate is evidence of ownership of an interest in a corporation. It is a chose in action and is transferable by assignment. While not a negotiable instrument, it nevertheless takes on many of the characteristics of negotiability. Stock certificates are frequently sold in the open market as negotiable securities. National Safe D. & Tr. Co. v. Hibbs, 229 U. S. 391, 33 S. Ct. 818, 57 L. Ed. 1241. A certificate of stock with an assignment and power to transfer indorsed on the back, although in blank except as to signature and witness, presents such indicia of title that an innocent holder obtains good title. Talcott v. Standard Oil Co., 149 App. Div. 694, 134 N. Y. S. 617. An innocent purchaser will be protected in case of purchase of a certificate of stock from a broker even though the certificate was fraudulently issued or put in circulation through the wrongful or criminal acts of the officers or agents of the corporation. Jarvis v. Manhattan Beach Co., 148 N. Y. 652, 43 N. E. 68, 31 L. R. A. 776, 51 Am. St. Rep. 727. The original owner, as between him and an innocent purchaser for value, is estopped from asserting that one to whom he has intrusted stock certificates exceeded his authority in disposing of them to such innocent purchaser. McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341; Knox v. Eden Musee Co., 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. Rep. 700.

■ As between the owner and other parties to the aforesaid agreement, the agreement was binding. In re Fieux's Estate, 241 N. Y. 277, 149 N. E. 857. Nevertheless, had Mrs. Lomb so elected in her lifetime, she might have sold this stock in good faith for value and transferred her whole interest in the corporation as represented by the stock certificates, both relating to management, profits, and the ultimate assets of the corporation, and have given enforceable title to the purchaser in spite of the provisions of the agreement (In re Argus Co. et al., 138 N. Y. 557, 34 N. E. 388; Hassel v. Pohle et al., 214 App. Div. 654, 212 N. Y. S. 561). Upon such a transfer an innocent purchaser would have such an absolute title to the interest which Mrs. Lomb had in the corporation as evidenced by her stock ownership that he could compel the corporation to transfer the stock to him upon the corporation books and to give him such part in the management of the corporation as his stock ownership would entitle him. Driscoll v. West Bradley & C. M. Co., 59 N. Y. 96. She was not bound by the terms of that agreement or otherwise to transfer the stock to any such person not a

party to the agreement at the price fixed by the agreement or by virtue of the formula therein contained, and she might, had she elected to do so, have sold the stock for its book value or for a larger sum, or might have given it away. The only remedy that the other signers to the agreement would have had in the event that she had made such a transfer in her lifetime would have been by way of action for damages, if any had resulted. In re Argus Co., supra; Hassel v. Pohle, supra.

The executor has presented no evidence in this case that the certificate of incorporation or any by-law of the company authorized any restriction on the right to transfer stock. In the absence of restrictions, qualifications, limitations of privileges, etc., so authorized, such restrictions, limitations, or qualifications as to sale as contained in the agreement are binding only between the parties, and would not be binding upon a purchaser of the stock from Mrs. Lomb had she elected to sell, even though reference to the agreement and the restrictions were contained on the certificate, or the purchaser otherwise had notice of the restriction. Driscoll v. West Bradley, etc., Co., supra; Reynolds v. Bank of Mt. Vernon, 6 App. Div. 62, 39 N. Y. S. 623, affirmed 158 N. Y. 740, 53 N. E. 1131.

It is thus clear that there was nothing contained in the agreement which could legally restrict the sale of stock by Mrs. Lomb during her lifetime to a person who was not a party to the agreement, had she elected to sell. However, the agreement itself places her in a position whereby she was free to transfer the stock without it being previously offered to the other signers of the agreement and upon any price or on any terms or for any consideration that she might desire to place. It is specifically provided that she might, notwithstanding the provisions of the agreement, have given and transferred any or all of the stock to any of the stockholders signing the agreement "in such manner and in such amounts or proportions" as to her might have seemed proper, and under the provisions of the third clause of the agreement she had the right, and she took advantage of this right, inasmuch as she died without issue, to give the stock to her husband, who was a signer of the agreement. Nevertheless, she might have given ten per cent. of the stock to any person she might have selected. She was therefore not restricted by the terms of the agreement itself in transferring the stock at any price or under any conditions she saw fit, except that she must have transferred it to a particular class mentioned. Not only as a matter of law, regardless of the agreement, but in spite of the express terms of the agreement, the Commissioner was bound to fix the value of the stock and was not limited or restricted to the formula contained in the agreement.

The executor relies upon the case of Wilson et al. v. Bowers, 57 F.(2d) 682, which had to do with an agreement providing for an irrevocable option still in force at the date of death of the maker, but the facts in the case at bar, as above indicated, do not come within the terms of that decision. Otherwise, it would be necessary for this court to follow it. Each case must be settled upon its own facts. It is of no purpose to assert that a mere restriction on the sale of stock between the parties is conclusive on the question of taxation. The fact that the stock passed directly to Carl F. Lomb, who was a signer of the agreement, and that he still retains the stock subject to the terms of the agreement, is of no consequence in this case.

The stock did not pass to him at the price fixed as its value by the agreement. That price was applicable only where sale was made to those who had the option to buy. That provision of the agreement ceased to have any effect when Mrs. Lomb exercised her express right to transfer her stock by will. As part of her estate, had it been necessary or desirable for the executor to convert it into cash, it would have been subject to distribution as any other item in the estate. Mr. Lomb acquired no right to this stock during the life of the testatrix. His right to ownership attached only at his wife's death. Her creditors took precedence over that ownership by Mr. Lomb. In the case of an outstanding valid option, the rights of the parties are fixed at the time the option takes effect, subject to being defeated only in the event that the prospective purchaser fails to exercise his option to buy. In re Fieux's Estate, 241 N. Y. 277, 149 N. E. 857. If the option is in effect at the time of the death of the owner, the interest of the owner that passes is measured by the sum the prospective purchaser is required to pay. Wilson v. Bowers, supra. But if the property which is the

subject of the option passes to an innocent purchaser for value before the date of expiration of the option, the right of the prospective purchaser, as a matter of law, to specific performance has ceased and his only remedy is an action at law for damages. In re Argus Co., supra. In no event could such an option be specifically enforced against an innocent transferee for value after the transfer took effect. Here Mrs. Lomb did not restrict the value of the stock transferred to any definite price nor did the agreement require her to do so.

In view of what has been said, it is not necessary to discuss at length what is claimed to be conflicting decisions on the questions raised here in different circuits. Counsel for the government insists that the rule laid down in the Wilson Case is not the rule adopted by other courts or by other bodies having to do with the administration of the tax laws, even in the case of such an option as that specified in the Wilson Case. They assert that the Board of Tax Appeals has held that there can be no restriction placed upon the Commissioner in determining the amount of tax even in the case where there exists an irrevocable option for purchase and sale (City Bank Farmers Trust Co. v. Commissioner, 23 B. T. A. 663); that the Tenth Circuit Court of Appeals has so held (Newman v. Commissioner of Internal Revenue, 40 F.(2d) 225, affirmed on rehearing in 41 F.(2d) 743) as has the Eighth Circuit Court of Appeals (Helvering, Commissioner, etc., v. Kendrick Coal & Dock Co., 72 F.(2d) 330), and the Second Circuit in an earlier case (Rodrigues v. Edwards, 40 F.(2d) 408), and the Fourth Circuit (Wright et al. v. Commissioner, etc. (C. C. A.) 50 F.(2d) 727). Each case turned on its own peculiar underlying facts. Generally underlying the decisions in the foregoing cases is the principle that parties may not evade taxation by the simple expedient of agreeing among themselves as to the value of stock or by placing thereon some restriction upon its sale which has or tends to have the effect of hindering or defeating the government in its attempt to fix the fair market value of stock for tax purposes.

There is no evidence in this case, nor is there any claim, nor can any inference be properly drawn, that the agreement in question here was made for the purpose of evading taxation. Its sole purpose was obviously to enable those who had built up the Bausch & Lomb industry from its infancy, or their successors, to continue control of the corporation.

Upon the foregoing facts and in view of the law applicable to the case, it must be concluded, as a matter of law:

(1) The parties between themselves had no power to restrict the sale of the stock in question and thereby depress its value so as to conclude the Commissioner of Internal Revenue as to the fair market value of the stock as of the date of the death of Carrie B. Lomb.

(2) The agreement by which the value of the stock in question was depressed had no binding force and was void as between the estate of the deceased and the Commissioner of Internal Revenue.

(3) The valuation of decedent's stock by the Commissioner of Internal Revenue is presumed to be correct, and plaintiff has failed to sustain the burden of proving that the stock should be valued at less than its full fair market value, which has been fixed by the Commissioner at the sum of $100 per share.

(4) Even though the agreement of May 16, 1928, had provided a binding option for the purchase and sale of the stock, the reservation of a power of appointment by the deceased whereby she might dispose of said stock by gift or otherwise is sufficient to prevent the substitution of the restrictive sales price for the fair market value of the stock.

(5) Plaintiff has failed to meet the burden of proof of showing that the Commissioner has erred in any respect in his determination.

(6) The complaint herein should be dismissed, with costs.

The foregoing may constitute the findings of fact and conclusions of law in accordance with the provisions of Equity Rule 70½ (28 USCA following section 723), and shall be deemed such for all purposes of this case.

Let a decree be entered to carry this decision into effect.