Pierce **ROSENBERG**, Executor of the Estate of Benjamin Rosenberg, Plaintiff-Appellant,

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 13712.

United States Court of Appeals
Seventh Circuit.

Nov. 14, 1962.

---

Bruno V. Bitker, Robert L. Mann, Milwaukee, Wis., for appellant.

James B. Brennan, U. S. Atty., Milwaukee, Wis., Louis F. Oberdorfer, Asst. Atty. Gen., Martin B. Cowan, Atty., Tax Division, U. S. Department of Justice, Washington, D. C., Lee A. Jackson, Loring W. Post, Attys., Department of Justice, Washington, D. C., Philip L. Padden, Asst. U. S. Atty., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and MAJOR, Circuit Judges.

CASTLE, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing an action brought by the plaintiff-appellant, Pierce Rosenberg, Executor of the Estate of Benjamin Rosenberg, against the government for refund of an alleged overpayment of estate tax. The alleged overpayment results from a deficiency assessment made by the Commissioner of Internal Revenue on the basis that the commuted value of payments under an employee's pension plan insurance policy is a part of the decedent's estate. The taxpayer paid the assessment. His claim for refund was denied and he brought suit.

The case was tried in the District Court on stipulated facts and documentary exhibits. The District Court made findings of fact and conclusions of law, filed an opinion expository of its conclusion that the commuted value of the benefits received by decedent's beneficiary is includable in decedent's gross estate under the provisions of Section 811(a) of the Internal Revenue Code of 1939, and entered the judgment appealed from.

The pertinent facts may be summarized as follows:

Benjamin Rosenberg, the taxpayer's decedent, died on May 3, 1953. He was the president of the Benjamin Rosenberg Company (later Grand Apparel Company) which in November, 1937, established a pension plan and trust for certain of its employees. The plan, as amended in 1943, was a qualified plan and exempt trust under Section 165 of the Internal Revenue Code of 1939. The decedent was one of the employees covered by the plan in 1937, at which time he was 58 years of age.

The company was the sole contributor to the trust and all contributions, once made, were irrevocable. Contributions were made on the basis of the employee's average monthly compensation. The trustee, in accordance with the trust agreement, purchased commercial insurance policies on the lives of the individual employees, which policies provided life insurance prior to maturity and retirement benefits afterwards. The policy purchased for decedent's benefit matured on November 30, 1947, his normal retirement date, and it had a cash value payable on that date of $70,740. However, the decedent elected to postpone his retirement and pursuant to the terms of the trust the trustee elected to exercise the option to leave the proceeds of the policy with the insurer for five years. Under this election, agreed to by the insurer and approved by the decedent, and which stated that it was irrevocable, interest on the matured value during the five year period was payable to the decedent. For fifteen years thereafter he was entitled to monthly payments of $505.25 each. In the event of his death, the unpaid interest or monthly installments were payable to his widow. If he left no widow, or if she died before receiving the last payment, all benefits thereafter were payable to surviving children or surviving issue of de-

ceased children. In the event all the designated beneficiaries died before the last payment became due, the proceeds were payable to decedent's estate.

The trust agreement declares that the pension trust is to be maintained for the exclusive benefit of the company's employees. Under its provisions employees having or attaining five years of service are eligible to participate and by written application to become beneficiaries of and parties to the trust agreement. The company is the sole contributor and it has the right to cease contributions at any time. The trustee is the absolute owner of all the life insurance contracts and it is provided that the insurer may rely upon the authority of the trustee for any act without investigating the terms of the agreement. It is provided that the employee "shall designate as beneficiary or beneficiaries of any death benefits any person or persons related to the participant by blood, marriage or adoption or who are dependent on him, or the personal representative of his estate." Upon retirement of the employee, the trustee has sole discretion to select the option in the insurance contract under which the benefits will be distributed. But the payments are to be made directly to the employee "or in the event of his death to his beneficiaries, family or estate, as the case may be." Provisions are made for payments to participating employees who leave the employ of the company after more than two years participation but prior to attaining retirement age. It is provided that if the company elects to terminate and permanently discontinue its contributions to the trust the trustee (subject to his election to continue the trust pro tanto through the application of any unallocated cash on hand) is to terminate the trust and deliver and assign to each of the respective participating employees the insurance contracts or policies held for

him, and such portion of the cash on hand as such employee may be entitled proportionately to receive.

The decedent retired on November 30, 1952, and died on May 3, 1953, after receiving all the interest payments, but only five of the 180 monthly payments. The monthly payments were then made to his widow. On the date of decedent's death the commuted value of all future payments was $68,730.30. The amount was not included in the estate tax return but the Commissioner determined that it was includable in the gross estate, and assessed a deficiency of $16,461 which the taxpayer paid[1] and seeks to recover with interest.

We perceive no error in the District Court's disposition of taxpayer's action. We agree with the District Court that, on the material facts presented, Section 811 (a) is applicable.[2] That Section (26 U.S. C.A. (I.R.C.1939) § 811(a)) provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) To the extent of the interest therein of the decedent at the time of his death."

We are not persuaded by the contention of the taxpayer that the decedent had no property interest in the policy or its proceeds at the time of his death, much less by the broader assertion that at no time from the creation of the trust did the decedent have such an interest. At the time of his death the decedent was receiving monthly payments in distribution of the proceeds of the policy. His right to such payments was a legally enforceable interest. And, under the provisions of the trust relating to payments to par-

1. The amount paid by the taxpayer included interest on the deficiency assessment.

2. § 810 imposes an estate tax "upon the transfer of the net estate" of a decedent

equal to a percentage of its value, and § 812 provides that the "value of the gross estate" is the base from which the value of the net estate is to be determined.

ticipating employees who leave the company's employ prior to attainment of retirement age, there is no doubt but what had decedent chosen to retire one day prior to November 30, 1947, he would have been entitled to receive the entire cash value of the policy. By voluntarily foregoing this immediate right to $70,740 in cash and postponing his retirement the decedent made it possible for the trustee to select the settlement option he did. Thus, whether the decedent would take down the $70,740 or permit the trustee to exercise his discretion to select from among the settlement options available under the policy, restricted by the terms of the trust as to permissible beneficiaries, was entirely within the decedent's control. As a participating employee the decedent was a party to the trust agreement and possessed of irrevocable, indefeasible, and enforceable rights in the benefits to arise from the contributions after they were made, albeit that the manner of payment of the benefits upon retirement was subject to variance depending upon the settlement option selected by the trustee—contingent only on a choice by the trustee among designated alternatives known to decedent at the time he chose to forego his immediate right to the proceeds of the policy in favor of postponing retirement and permitting the trustee to act for him in making the selection among the alternative settlement options. No act of the company, the insurer, or the trustee could have destroyed decedent's enjoyment of the full value of the contract had he elected to take it down nor have dispossessed the decedent of the interest he or his beneficiaries, family or estate had under the permissible settlement options.

We cannot be blinded by the fact that the company did not have to make the contributions. What is important is that the company did make the contributions, in consideration of services rendered and to be rendered, and once made, each contribution was irrevocably dedicated to the decedent's benefit on the sole condition that he continue to render services to the company until a specified time or event.

The proper test here, then, is not whether the contributions were made voluntarily, but whether they were made in consideration of services rendered, or to be rendered, and whether, once made and various conditions satisfied, the benefits were irrevocably dedicated to the employee, his estate, or to the permissible beneficiaries. These considerations serve to distinguish the instant case from Dimock v. Corwin, E.D.N.Y., 19 F.Supp. 56; Worthen v. United States, D.C., 192 F. Supp. 727; Estate of Salt v. Commissioner, 17 T.C. 92 and United States Trust Co. of New York v. Commissioner, 9 B.T.A. 514.

The fact that the trustee is here utilized as an instrument in effecting a transfer is of no import. In Chase National Bank of City of New York v. United States, 278 U.S. 327, 337, 49 S.Ct. 126, 128, 73 L.Ed. 405, it is pointed out:

"Obviously, the word 'transfer' in the statute, * * * cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another."

And in Lehman v. Commissioner, 2 Cir., 109 F.2d 99, 100, it was stated:

"While section 302(d) [Revenue Act of 1926] speaks of a decedent having made a transfer of property * * *, it clearly covers a case where the decedent by paying a *quid pro quo* has caused another to make a transfer of property * * *." (Emphasis supplied.)

This Court has expressly recognized that a decedent's services may constitute the *quid pro quo* for a transfer to his widow. Simpson v. United States, 7 Cir., 261 F.2d 497, 501. And in Simpson there was no legal obligation to make a transfer. The

use of intermediaries, such as an employer, an insurance company, and a trustee, cannot obscure the fact that here a transfer of property in which the decedent had an interest at the time of his death occurred.

We are of the view that the instant case is not materially distinguishable from Estate of Garber v. Commissioner, 3 Cir., 271 F.2d 97, relied upon by the District Court, and we agree with the conclusion there reached. In so far as Glenn v. Hanner, 6 Cir., 212 F.2d 483, may be taken as indicating a contrary view as to the application of § 811(a) we are not disposed to follow it.

The judgment order of the District Court is affirmed.

Affirmed.