Estate of Wilmar Mason Allen, Erma S. Allen, Administratrix, C.T.A., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 85375. Filed February 15, 1963.

*William S. Stewart, Esq.*, for the petitioner.
*John L. Ridenour III, Esq.*, for the respondent.

### OPINION.

DRENNEN, *Judge:* Respondent has determined that there is due from petitioner a deficiency in estate tax in the amount of $18,520.36.

The issues for decision are:

(1) The value for estate tax purposes of benefits under a pension agreement entered into between Wilmar Mason Allen (hereafter called decedent) and his employer; and

(2) Whether petitioner is entitled to a marital deduction equal to the value of the interest of decedent's surviving spouse, Erma S. Allen (hereafter called Erma), in the benefits payable to her under the pension agreement.

Petitioner has made claim for overpayment in estate tax and for additional deductions representing expenses incurred in this proceeding. The credit for State death taxes will be a mathematical computation.

The case was submitted under Rule 30 on the basis of the pleadings and a stipulation of facts which is incorporated by this reference.

Decedent died testate January 14, 1956, at the age of 61, a resident of Orange County, N.C., survived by his wife, Erma, who is the duly appointed and acting administratrix c.t.a. of the estate of decedent. Erma is a resident of Chapel Hill, N.C. A timely Federal estate tax return was filed for the estate of decedent with the district director of internal revenue, Greensboro, N.C. Valuation of items of the gross estate was as of date of death.

Under date of May 28, 1947, decedent, a physician, and his employer, the Hartford Hospital, Inc. (hereafter called the hospital), of Hartford, Conn., entered into an agreement providing for retirement benefits to be paid decedent. Generally, decedent was to be paid a monthly retirement income for life beginning upon retirement computed by a formula based upon monthly pay and years of employment. The normal retirement age was to be 65, but decedent could

retire before attaining that age if he became permanently disabled or if, upon reaching age and after completing at least 15 years of employment, he established to the satisfaction of the hospital that he should be allowed to retire. To provide the retirement benefits, the hospital was to purchase a contract, or contracts, from an insurance company. Depending upon the underwriting rules of the insurance company, the contract to be purchased was a combination life insurance and annuity policy; otherwise it was to be an annuity contract. But in either case, the contract was to provide decedent with his monthly retirement income payable for 10 years certain and for life. In lieu of the normal monthly retirement income, decedent and his wife could have the cash value of the contract applied to purchase a joint and survivor monthly annuity on the lives of decedent and his wife, payable to decedent for his life and thereafter for the life of his wife, such payments after his death to be made to her until her remarriage and to the hospital thereafter.

The costs of the contracts were to be paid by both decedent and the hospital, with decedent contributing 3 percent of his annual salary toward such costs and the hospital contributing the remainder. If a life insurance benefit was obtained, decedent's contributions were first to be applied to the cost of such benefit.

Article IX of the agreement provided:

In the event of the death of an Employee before the normal retirement date of the Employee; or in the event of the death of an Employee after normal retirement date, if the joint and survivor annuity settlement described in Section IV has not been made effective, any remaining payments due from the insurance company on the contract or contracts on the Employee's life shall be received and retained by the Hospital free from this agreement unless the Employee is survived by a spouse, in which event the payments due on said contract or contracts shall be disposed of as follows:

(a) The Hospital shall arrange with the insurance company to have the cash or commuted value of the remaining payments on the contract or contracts applied to create a fund, to which shall be added such interest as the insurance company may allow, and from such fund there shall be payable to the spouse monthly installments at a rate equal to one-half of the rate of the Employee's normal monthly retirement income as determined by Section II hereof. Said payments shall be continued to said spouse until the fund is exhausted, except upon the remarriage or death of the spouse any remaining funds held by the insurance company shall be paid to and retained by the Hospital free from this agreement.

(b) In lieu of the settlement provided for in (a) above, the Hospital will, if requested by the spouse within thirty days after the death of the Employee, arrange with the insurance company to have the cash or commuted value of the remaining payments on the contract or contracts applied under any mode of settlement provided by said contract or contracts, except that the settlement elected must be one which will produce monthly payments not in excess of the rate of monthly payments which would be provided under the settlement plan described in (a) above. Payments under said settlement shall be made to said

spouse, except that upon the death or remarriage of said spouse any remaining payments shall be paid to and retained by the Hospital free from this agreement.

Anything in this agreement to the contrary notwithstanding, it is agreed that if the Employee dies before or after normal retirement date and if the aggregate amount of payments received by the Employee and by the spouse of the Employee does not equal the aggregate amount of the Employee's contributions with 2% interest compounded annually to normal retirement date or to date of death prior thereto, then the difference shall be paid by the Hospital to the executors or administrators of the Employee unless the Employee is survived by a spouse and said spouse has not remarried at the time of the death of said spouse, in which event said difference shall be paid to the executors or administrators of said spouse.

Whenever it is provided that payments are to be made to the spouse only until remarriage, the insurance company shall be entitled to make payments to the spouse until notified by the Hospital of the remarriage of the spouse, and the insurance company shall be entitled to rely conclusively upon such advice by the Hospital.

The agreement was funded primarily by a policy issued by Aetna Life Insurance Co. (hereafter called Aetna) under date of May 28, 1947, providing that decedent was to be paid monthly the amount of $566.67 for life. Payments were to begin in 1959 when decedent would be 65 and were for 10 years certain. Also, upon death of decedent, the beneficiary of the life insurance, the hospital, was to be paid the sum of $56,667 or, if greater, the cash surrender value of the policy. To reflect increases in salary and resulting increased monthly retirement benefits to which decedent was entitled under the agreement with the hospital, four additional annuity contracts were obtained from Aetna, the last of which was issued May 28, 1954. (All of the Aetna contracts may be referred to herein as the contracts or insurance contracts.) The total monthly amount payable to decedent under the five contracts when he reached age 65 was $621.15. Total annual premiums for the five contracts amounted to $9,282.29. Under all five contracts, the hospital was to receive the cash value of the policies in the event decedent died before maturity of the annuity contracts, that is, May 28, 1959. The hospital was the owner and named beneficiary in all the contracts and as such had the right "to receive all cash values, loans, dividends and other benefits accruing hereunder, to exercise all options and privileges described herein, and to agree with the Company [Aetna] to any change in, amendment to, or cancellation of this policy."

The five contracts were in force on January 14, 1956, the date of death of decedent. Premiums were paid on the five contracts by the hospital in the amount of $72,865.47 and by decedent in the amount of $2,769.29. The only contract providing life insurance benefits was the original policy of May 28, 1947, and at the date of death of decedent the reserve value of this contract exceeded the death benefit.

The proceeds of the five contracts amounted to $67,745.91.

On February 13, 1956, the hospital, in compliance with the provisions of article IX of the agreement with decedent, surrendered the five contracts to Aetna in exchange for Aetna's supplementary contract No. SC 96308 which provided for monthly payments to Erma, beginning January 14, 1956, in the amount of $299.44, for life and for a term certain of 10 years. The contingent beneficiary named in the supplementary contract was the hospital which was to receive, upon the death of Erma, the commuted value, computed on the basis of 2-percent interest, of any unpaid monthly installments. It was further provided that, upon the remarriage of Erma, future monthly installments becoming due under the supplementary contract were to be payable when due to the hospital.

Erma was born December 9, 1898, and was 57 years of age at decedent's death.

Based upon the interest and mortality assumptions used in calculating the benefits payable under the supplementary contract issued by Aetna, the cost of a contract which would provide for payment of a life annuity of $299.44 monthly to Erma beginning January 14, 1956, with no death benefits and with no term certain would have been $65,889.38. For this reason, it was reported on the estate tax return filed on behalf of the estate of decedent that the value of the benefits under decedent's agreement with the hospital was $65,889.38. This amount was also claimed on the estate tax return as a part of the marital deduction.

Respondent determined that the value of the benefits for estate tax purposes is $67,745.91, and that no marital deduction is allowable with respect to Erma's interest in the benefits.

Respondent contends, and petitioner does not dispute, that the value of the annuity is to be included in the gross estate of decedent under the provisions of section 2039,[1] the pertinent [2] subsections of which are as follows:

SEC. 2039. ANNUITIES.

(a) GENERAL.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise noted.

[2] It is agreed that sec. 2039(c) has no application. Decedent's pension agreement with the hospital was not part of a "qualified plan," nor was the hospital an organization exempt from tax, so far as the record shows. The parties agree that sec. 2042 is not involved herein since the reserve value under the initial policy purchased to fund the agreement was, at decedent's death, greater than the death benefit. Sec. 20.2039–1(d), Estate Tax Regs. Cf. Rev. Rul. 57–191, 1957–1 C.B. 162; Rev. Rul. 55–639, 1955–2 C.B. 230.

without reference to his death or for any period which does not in fact end before his death.

(b) AMOUNT INCLUDIBLE.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

Respondent determined that the value of the annuity to be included in the gross estate under section 2039 is $67,745.91, the cash value of the five contracts which the hospital surrendered to Aetna in exchange for the supplemental contract providing the benefits described above. Respondent supports this determination with the argument that under section 2039(a) the gross estate shall include the value of an annuity receivable by *any* beneficiary by reason of surviving the decedent under contracts such as are here involved, that the value to be included is not limited by section 2039(b) because under that section the hospital's contributions, being made by reason of decedent's employment, are considered to be contributed by decedent, and that the entire value of the annuity is the total amount paid or surrendered to Aetna in order to provide the annuity elected under the pension plan and insurance contracts.

Petitioner contends that the value to be included in the gross estate is $65,889.38, which is stipulated to be the amount which an annuity for Erma providing her with a monthly income for life in the amount of $299.44, with no term certain, would have cost. It is argued that only the hospital could benefit from the term certain provision; decedent had no interest in it, nor should the contributions of the hospital required to purchase this feature be considered made by decedent under section 2039(b).

Section 2039 is new in the 1954 Code. It was designed to eliminate the uncertainty existing under prior law whether a joint and survivor annuity purchased by a decedent's employer, or an annuity to which both the decedent and his employer made contributions, was includable in decedent's gross estate. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 123 (1954); H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 90 (1954). While the language used may be broad enough to go well beyond the precise situation which impelled the change, cf. *Bahen's Estate* v. *United States*, 305 F. 2d 827 (Ct. Cl. 1962), we believe the objective of Congress when examined in the light of the general scheme of the estate tax should be kept in mind in applying its provisions. As is often the case when new provisions are added to existing law for a specific purpose, it is sometimes difficult to cor-

relate the new provision with all the provisions of existing law. We find that to be the situation here to some extent.

The only question we have under section 2039 is the value of the annuity to be included in the gross estate. The parties agree that the value of the annuity receivable by Erma, at least, is includable in the gross estate. So we must first determine the value of Erma's annuity. Under the circumstances of this case, where Erma's rights stem solely from the pension agreement and the insurance contracts were used only to fund the benefits provided by the agreement, with the hospital being the owner and named beneficiary of all death benefits, we must consider the agreement and the contracts together in determining the value of Erma's annuity, as well as in deciding the second issue in this case.

As we read the pension agreement and the insurance contracts, upon decedent's death before maturity of the insurance contracts (at decedent's normal retirement date) the only obligation of Aetna was to pay to the hospital the cash value of the contracts, or $67,745.91.[3] Under article IX of the pension agreement, where decedent was survived by a spouse the hospital was required to arrange with Aetna to have the cash value of the contracts applied (a) to create a fund from which monthly installments not in excess of one-half the normal retirement income of decedent (which one-half would appear to have been $310.58 per month) would be paid to the spouse until the fund was exhausted, or, in lieu thereof, (b) applied under any mode of settlement provided by said contracts, except that it must be one which would produce monthly payments not in excess of the rate of the monthly payments provided under (a) above. In each case, upon the death or remarriage of the spouse any remaining amounts or payments were to be paid to the hospital.

It thus appears that Erma could have elected to have the entire $67,745.91 paid to her in monthly installments of one-half decedent's normal retirement benefits. There is no evidence to indicate the present value (at decedent's death) of that benefit.[4] However, for some reason not apparent from the record a settlement option was chosen which provided Erma a monthly income of $299.44 for life with 120 payments certain. While it is true that Erma had no interest in the term certain, it appears that this was the only settlement option under which she could be assured an income for life; and she may have been willing to take smaller monthly payments with a term certain in order to be assured an income for life. We believe we must assume that Erma elected the settlement option she considered would be most

---

[3] While this amount is not stipulated, it is agreed to in the pleadings.

[4] There is likewise no evidence upon which we could discount this value by reason of the possibility of Erma's remarriage.

beneficial to her. In any event this was the settlement option selected and under it the only benefit receivable by Erma was the right to receive $299.44 per month as long as she lived. It is stipulated that this benefit or annuity could have been purchased for Erma for $65,889.38 which we find is the value of the annuity receivable by Erma.

Respondent contends that even if the value of Erma's annuity is limited to $65,889.38, nevertheless the entire $67,745.91 face value of the contracts must be included in the estate because the difference in the two figures represented the value of an annuity or payment receivable by the hospital, and the hospital qualifies as a "beneficiary" under section 2039(a). While the hospital was named as a beneficiary in the insurance contracts, we do not think it can be considered a beneficiary, within the intendment of section 2039(a), under the pension agreement, which we believe must be considered the controlling agreement for purposes of determining the status of the parties in relation to the benefits receivable. Decedent had no interest in the hospital except as an employee. The hospital established the pension plan to provide additional or deferred compensation for decedent, and his wife, in the event of decedent's untimely death, as long as she did not remarry. Decedent and his wife were the beneficiaries of the plan. The hospital simply reserved to itself the right to recover any of its contributions not used to provide the benefits to which decedent and his wife were entitled. This did not make the hospital a beneficiary of decedent's estate, or of anything owned by decedent at the time of his death, or of anything in which decedent at any time had any interest or control. We think such is necessary to qualify the hospital as a beneficiary under section 2039 if that section is interpreted under the general scheme of the Federal estate tax. To accept respondent's argument would lead to the unconscionable conclusion that had Erma predeceased decedent so that the entire cash value of the contracts would have been payable to the hospital, nevertheless that amount would have been taxable as a part of decedent's gross estate. We do not think Congress intended such a result or that the law as written requires it. We do not think the hospital was a "beneficiary" within the meaning of section 2039(a) under the circumstances here present.

In view of the above conclusions and the fact that petitioner agrees that $65,889.38 should be included in the gross estate as the value of Erma's annuity, we have no need to discuss the limitation provisions of section 2039(b). Suffice it to say that we find nothing in that section which would prevent including the entire value of Erma's annuity in decedent's gross estate.

On this issue we conclude that the amount of $65,889.38 is includable in decedent's gross estate under section 2039.

The second issue is whether all or any part of the value of the annuity to Erma qualifies for the marital deduction under section 2056.[5] Respondent argues that no marital deduction is allowable because, as stipulated, Erma's interest in the property is a terminable interest and because an interest in the property (the right to "remaining payments") passed from decedent to the hospital for less than full and adequate consideration, and by reason of such passing, the hospital may enjoy a part of the property after the failure of Erma's interest; Erma's interest, respondent urges, is thus disqualified for the marital deduction under section 2056(b).[6] Petitioner contends that although Erma's interest is a terminable interest it is not disqualified for the marital deduction because no interest in the property passed from decedent to the hospital for less than full and adequate consideration. Whatever interest decedent had in the property passed to Erma and no other person, petitioner contends, and whatever interest the hospital had in the "remaining payments" or term certain, it acquired by reservation in the pension agreement for adequate consideration.

The Supreme Court held in *Meyer* v. *United States*, 364 U.S. 410 (1960), that a policy of life insurance which provided payments to decedent's wife for life, with 240 payments guaranteed, decedent's daughter to take the remaining guaranteed payments in the event the wife died before receiving same, constituted only one property

---

[5] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

[6] Respondent also halfheartedly claims that Erma's interest is disqualified under par. (C) of sec. 2056(b), but there is nothing to indicate that Erma's interest was to be acquired for her by decedent's executor or a trustee of a trust.

in which both the wife and daughter had an interest and could not be divided into two properties, the one being the guaranteed payments, in which both the wife and daughter had an interest and which admittedly would not qualify for the marital deduction, and the other being the right to receive payments beyond the guaranteed period in which only the wife had an interest. The Court held that since the entire fund which provided all the benefits was one property, and the daughter had a contingent interest in that property, none of the value of the wife's interest qualified for the marital deduction. That case requires the conclusion here that the interest of Erma in the form of annuity benefits and the interest of the hospital as contingent beneficiary of at least a part of those benefits were interests in the same property. We cannot divide the fund into two parts, one representing Erma's interest and the other representing the hospital's interest.

However, to disqualify Erma's interest for the marital deduction the hospital's interest in the property must have passed to it from decedent, and for less than an adequate and full consideration. Section 2056(e)[7] defines the circumstances under which an interest in property shall be considered as passing from the decedent to any person for purposes of section 2056. While there would seem to be some difficulty in fitting a survivorship annuity into the literal language of any of the seven circumstances set forth in section 2056(e),[8] we need not pass on this because both parties recognize that to the extent of decedent's interest therein the annuity benefits passed from decedent to the survivor, petitioner by claiming that Erma's interest qualifies for the marital deduction, and respondent by

---

[7] SEC. 2056(e). DEFINITION.—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

    (1) such interest is bequeathed or devised to such person by the decedent;

    (2) such interest is inherited by such person from the decedent;

    (3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

    (4) such interest has been transferred to such person by the decedent at any time;

    (5) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship;

    (6) the decedent had a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or nonexercise of such power; or

    (7) such interest consists of proceeds of insurance on the life of the decedent receivable by such person.

Except as provided in paragraph (5) or (6) of subsection (b), where at the time of the decedent's death it is not possible to ascertain the particular person or persons to whom an interest in property may pass from the decedent, such interest shall, for purposes of subparagraphs (A) and (B) of subsection (b)(1), be considered as passing from the decedent to a person other than the surviving spouse.

[8] Section 2056(e) was adopted without amendment from section 812(e)(3) of the 1939 Code, which Code contained no specific provision for including annuities in the gross estate as does section 2039 of the 1954 Code.

claiming that Erma's interest is disqualified because an interest in the property may pass from decedent to someone other than Erma.[9]

For the reasons set out in our discussion of the first issue, we do not think the hospital's interest in the proceeds of the insurance contracts passed from decedent to the hospital but instead was reserved by the hospital to itself under the terms of the pension agreement.

In addition, if the hospital's interest in the proceeds of the contracts could be considered as having passed from decedent to the hospital because the decedent was a party to the pension agreement, in our opinion the hospital's execution of the pension agreement and assumption of its obligations thereunder constituted full and adequate consideration therefor so that Erma's interest in the annuity would not be disqualified for the marital deduction in any event.

There is one point which has given us some concern on this issue but which has not been argued by the parties—that is that under the terms of the pension agreement if Erma, because of remarriage soon after decedent's death, did not receive benefits in an amount equal to decedent's contributions under the plan, the difference in the amount she did receive and the total of decedent's contributions was to be paid to decedent's estate. Thus, if the property in which Erma received an interest cannot be divided under the rule laid down in *Meyer* v. *United States*, *supra*, an interest therein might pass from decedent to someone else, through decedent's estate,[10] upon the termination of Erma's interest, thus disqualifying Erma's interest for the marital deduction under section 2056(b)(1).

Careful consideration of the *Meyer* case convinces us that it does not preclude treating decedent's contributions and the hospital's contributions as two separate funds or properties under the facts here present. The pension agreement provided for two separate and distinct funds. One was the amount of decedent's contributions to which he, Erma, or his estate was entitled in any event. The other was the contributions of the hospital from which decedent and Erma could benefit only in the event of certain carefully stated conditions. These separate funds were created by two unrelated parties. Erma had an interest in both, but the hospital had no interest in decedent's contributions and decedent's estate had no interest in the hospital's contributions. We think this distinguishes this situation from the *Meyer* case.

Viewed in this light there were two "properties" under the pension agreement. The first, decedent's contributions, had a date-of-death

---

[9] See also sec. 20.2056(e)–1(a)(6), Estate Tax Regs.

[10] The beneficiaries of decedent's estate were not stipulated, but the estate tax return indicates there were other beneficiaries.

value of $2,769.29 plus interest. Erma had an interest in this property which would terminate upon her remarriage, in which event it could pass from decedent to someone else for less than a full and adequate consideration. Consequently, petitioner has not demonstrated that the value of Erma's interest in this property qualifies for the marital deduction. Erma also had an interest in the second property, the hospital's contributions, and it was a terminable interest, but for the reasons stated above no interest in this property passed from decedent to anyone else for less than full and adequate consideration, so the value of Erma's interest in this property, to the extent it is included in decedent's gross estate, qualifies for the marital deduction.

Petitioner has not shown by what means the value of the contingent right of the estate to receive a return of decedent's contributions upon Erma's remarriage may be taken to decrease the proved value of Erma's annuity for life with no term certain. However, we do not believe this infirmity should be fatal to petitioner's case. Computations under Rule 50 shall be made upon the following basis:

The gross estate shall be the amount determined by respondent, except that the benefits payable under the pension agreement shall be included in the gross estate at a value of $65,889.38, rather than $67,-745.91. Deductions shall be in the amount as determined by respondent, except for two adjustments: Expenses incurred herein shall be allowed. The marital deduction with respect to Erma's interest in the payments under the pension agreement shall be allowed and the amount is $65,889.38 less the value of the contingent interest of the estate in decedent's contributions, which shall be taken to be $2,769.29 with interest compounded annually at the rate of 2 percent per year, computed from May 28 of each year next following the date of each of decedent's contributions to date of death. In no event shall the total marital deduction as adjusted exceed 50 percent of the final adjusted gross estate. The credit for death taxes paid to the State of North Carolina shall be computed by reference to the resulting taxable estate.

Inexactitude in the precise amount to be included in the gross estate is offset by the inexactitude in the precise amount of the marital deduction. The foregoing represents the fairest method of reconciling the requirements of the burden of proof with the understandable failure of petitioner to prove exact amounts.

Reviewed by the Court.

*Decision will be entered under Rule 50.*