The CHARLESTON NATIONAL BANK, a national banking corporation, as Executor and Trustee of the Estate of James Bingham Small

v.

UNITED STATES of America.

No. 2549.

United States District Court
S. D. West Virginia,
Charleston Division.

June 5, 1963.

Robert S. Spilman, Jr., Charles B. Stacy, Charleston, W. Va., for plaintiff.

Mitchell Samuelson, Washington, D. C., Harry G. Camper, Jr., Charleston, W. Va., for defendant.

FIELD, Chief Judge.

This case was submitted upon a stipulation between the plaintiff and the Government and, accordingly as I advised counsel at the hearing, I do not deem it necessary for me to make any definitive findings of fact. My conclusions of law will be stated herein and will be based upon the facts as stipulated. Based upon the stipulation, for the purposes of this opinion the facts may be briefly stated as follows:

The decedent, Small, died testate August, 4, 1953. He was a participant in a pension plan set up by his employer, Libbey-Owens-Ford, which provided for retirement benefits in the event he reached the retirement age of 65, and which provided for death benefits payable to any beneficiary whom he might appoint in the event of his death prior to retirement or prior to his receiving all of the retirement payments. Small died while still in the employ of Libbey-Owens-Ford prior to attaining the retirement age of 65. Under the plan the employees made no payments whatever into the trust fund, all payments being made by the employer. The plan was administered by a retirement board appointed by the company.

The L–O–F Plan was a qualified retirement plan under § 165 of the Internal Revenue Code of 1939. As stated above it required no contributions by the employees. Among other provisions, it provided that the company might terminate the retirement plan at any time for business reasons, and in such event, the funds accumulated should be used for the exclusive benefit of participants, retired

participants and their beneficiaries, and for no other purpose. It further provided that in such an event the fund should be distributed proportionately to those persons with respect to whom there might exist an obligation or liability under the plan. The company had the right to modify, amend, add to or revoke any one or more of the terms and provisions whenever such actions might become desirable or necessary to satisfy the provisions of the Internal Revenue Code relative to the qualification of the plan.

Small, as a participant, had the right to designate or appoint a beneficiary of the death benefits, including the right to change the beneficiary at any time. Article IV, Section 1 b provided that "If a participant ceases to be an employee for any reason whatsoever, he shall thereupon cease to be a participant * * *." Section 4 b of the same Article provided:

"Neither the establishment of this Plan nor any amendment thereof shall be construed as giving any participant, employee or any person whomsoever any legal or equitable right against the Company, the Trustee or the Retirement Board, nor shall any participant, employee or any other person have any right or interest in or to the Trust Fund except as expressly granted to him under the terms of this Agreement. This Plan shall not be construed as giving any employee or participant the right to be retained in the service of the Company and he shall remain subject to discharge by the Company without regard to the existence of this Plan."

The plan further provided that while the retirement age thereunder was 65 years, a participant was eligible for retirement after he had attained the age of 55, and might receive an early retirement allowance upon written application to the retirement board. However, Small did not avail himself of this early retirement option. Under the plan no separation benefits were payable from the fund to any employee whose employment might terminate prior to retirement.

While the plan extended relatively broad rights to a participant to name the beneficiary of the death benefits, Article VI of the plan provided that in the event a beneficiary should attempt to dispose of or encumber the benefits, or in the event the benefits should become subject to alienation by legal process, the trustees in their discretion might either pay the benefits for the use of a beneficiary rather than directly to him, or pay the benefits to or apply them for the benefit of certain specified relatives of the participant for limited purposes.

The decedent appointed his wife as sole beneficiary under the death benefit provision of the plan. Subsequent to the participant's death, Mrs. Small was advised by a representative of the company that the retirement board would extend to her a choice of four alternative modes of settlement with respect to the death benefit as follows: (1) she could elect to take an annuity payable over her life expectancy which payments would continue for her life but would terminate at her death; (2) she could receive payments of a specified amount per month which would continue for such period as the reserve under the plan might last; (3) she could take down the full amount of the reserve in a lump sum; or (4) payments could be deferred to start at a later date. Mrs. Small elected the second alternative with the provision that in the event of her death before the exhaustion of the reserve, any remaining payments should be made to her son.

The first question presented is whether the commuted value of the death benefit payments under the plan was an interest in property of the decedent under Section 811(a) of the Internal Revenue Code of 1939 which was properly includible in the decedent's gross estate. Counsel for the plaintiff contend that it was not so includible and point to a ruling of the chief counsel for the Bureau of Internal Revenue rendered in the year 1937 and involving a similar provision of the Revenue Act of 1926. In that ruling, it was stated that the decedent must have had a property right in the death benefit,

and in view of the company's right to withdraw or modify the plan at any time, it was clear that the decedent's interest prior to his death was nothing more than an expectancy which did not constitute a property right and therefore was not includible in the gross estate. Considerable reliance is also placed by plaintiff in the decision of the District Court for the Eastern District of New York in the case of Dimock v. Corwin (D.C.1937) 19 F.Supp. 56. The plan there under consideration was quite similar to that involved in the present case. The only substantial difference between the plan in the present case and that considered in Dimock was that the latter included a provision that in the event no beneficiary had been designated by an employee prior to his death, or should the beneficiary's death precede that of the employee, then in such event the death benefits would lapse. In Dimock the Government contended that the property of the decedent was his right which he exercised "to designate the beneficiary of his death benefit." In answer to this contention, the Court stated:

> "The defendant's argument is that, when the decedent designated his wife to receive the benefit, 'he transferred to her his beneficial interest in the plan which was intended to take effect in enjoyment at his death.'
>
> "The foregoing betrays a complete misunderstanding of the difference between the annuity payable to Mr. Folger, and the death benefit payable to his wife. As to the latter, he was possessed of nothing during his life, save the capacity to nominate a person to whom, upon his death, the company could grant a sum called a death benefit. * * *"

It is true the Court pointed out that it was possible under this particular plan that the exercise of the privilege to name a beneficiary might, in fact, have failed to bring about the payment of the death benefit to any person at all in the event the named beneficiary should predecease the employee. However, I do not consider that as the controlling factor in the Court's decision in view of this further observation:

> "The right to nominate or designate the person to receive the death benefit could not have been levied upon to satisfy a judgment against the decedent during his lifetime; had he become bankrupt, his trustee could not have realized anything thereon for creditors, nor could it have been sold or assigned by the decedent because it was merely a privilege extended to him by his employer, which was subject to withdrawal or modification at any time, under the quoted terms of the plan."

This same Court had occasion to consider the question some 19 years later in the case of Molter v. United States (DC ED New York 1956) 146 F.Supp. 497. In this case the decedent had designated his widow as beneficiary under the death benefit provision, and the plan specified the possible beneficiaries therein. The company reserved the right to terminate, withdraw or modify the plan, and it was stated that the plan was not contractual and created no binding obligation upon the company. In granting the plaintiff's motion for summary judgment, the Court stated:

> "The foregoing Plan is not distinguishable in principle from that which was before this court in the case of Dimock v. Corwin, D.C., 19 F.Supp. 56, which was not appealed in respect of that branch of the case. That decision has not been adversely criticised in later cases."

In addition to the foregoing it would appear that the case of Glenn v. Hanner, 6 Cir., 212 F.2d 483, also supports the position of the plaintiff.

The Government contends that the present case falls within the principles enunciated by the Seventh Circuit in the case of Rosenberg v. United States, 309 F.2d 724. However, the facts of that case do not support the Government's position here for it is quite clear that in Rosenberg the decedent had definite

vested rights under the plan during his lifetime. In that case the trustee under the agreement purchased commercial insurance policies upon the lives of the individual employees which provided for life insurance prior to maturity and retirement benefits thereafter. The decedent's policy had a cash value of some $70,000.00 upon the date of his normal retirement age, November 30, 1947. However, the decedent elected to postpone his retirement and the proceeds were left at interest for a period of five years. Under this election which was agreed to by the insurer and approved by the decedent, interest on this matured value during the five-year period was payable to the decedent, and for fifteen years thereafter he was entitled to monthly payments. This arrangement was irrevocable and binding upon the decedent, and all of the other parties thereto. Under this election, in the event of the death of the decedent, the unpaid interest or monthly installments were payable to his widow or to his surviving issue. At the time of his death, the decedent had received all of the interest payments and five of the stated 180 monthly payments. In appraising these facts, the Court stated:

" * * * At the time of his death the decedent was receiving monthly payments in distribution of the proceeds of the policy. His right to such payments was a legally enforceable interest. And, under the provisions of the trust relating to payments to participating employees who leave the company's employ prior to attainment of retirement age, there is no doubt but what had decedent chosen to retire one day prior to November 30, 1947, he would have been entitled to receive the entire cash value of the policy. * * * No act of the company, the insurer, or the trustee could have destroyed decedent's enjoyment of the full value of the contract had he elected to take it down nor have dispossessed the decedent of the interest he or his beneficiaries, family or estate had

under the permissible settlement options."

In the case of Garber's Estate v. Commissioner, 3 Cir., 271 F.2d 97, cited by the Government, it likewise appears that the decedent had become eligible for full benefits but deferred his retirement. However, he became vested with certain rights in the plan upon having attained the eligible retirement age. Neither of these cases are apposite to the facts presented in the present case, and I am in entire agreement with the Tax Court's analysis of these cases in its opinion in Estate of Edward H. Wadewitz, 39 T.C. 925.

It is my conclusion that the facts of the present case bring it within the ambit of Dimock, and the death benefits under the plan here under consideration did not constitute an interest in property of the decedent under Section 811(a) of the Internal Revenue Code of 1939 as of the date of his death, and accordingly the commuted value of the death benefit payments was not properly includible in the decedent's gross estate. I also agree with counsel for plaintiff that consideration of the provisions of Sections 811(c), 811(d) and 811(f) of the Internal Revenue Code of 1939 is unnecessary inasmuch as all of these sections presuppose an interest in "property" of the decedent.

In the light of my foregoing conclusion, it is unnecessary for me to pass upon the question of whether the death benefits under this plan payable to the widow qualify for the marital deduction under the provisions of Section 812. However, I might observe that it is my opinion that while the interest of the decedent's widow is a terminable interest under the provisions of the plan, nevertheless it would not be disqualified for the marital deduction since the interest which might pass to any contingent beneficiary would not under the facts here present pass to such person "from the decedent" within the meaning of Section 812(e) (1) (B). See Estate of Wilmar Mason Allen, Docket No. 85375, 39 T.C. 817.

For the reasons stated and in the light of the conclusions upon the stipulated facts, judgment should be rendered for the plaintiff, and counsel may prepare an appropriate order incorporating this opinion by reference therein.