# ESTATE OF NICHOLAS H. DAVISCOURT, DECEASED *v.* DEPARTMENT OF REVENUE

Lee Davis Kell, Kell, Alterman, Runstein & Thomas, Portland, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered May 7, 1976.

CARLISLE B. ROBERTS, Judge.

This suit presents an inheritance tax question. Mr. Nicholas H. Daviscourt died on a business trip in Sarawak, Borneo, on December 5, 1970. His employer, Wood Slicing Corp., which does business under the name, and will hereinafter be referred to, as States Veneer Co., on November 19, 1971, agreed to pay to Mrs. Ruby A. Daviscourt, the widow of the decedent and the personal representative of his estate, the sum of $213,056.99. The Department of Revenue has assessed additional taxes against Mr. Daviscourt's estate under the theory that the present value of the $213,056.99 should be included in his taxable estate for inheritance tax purposes. The department affirmed its assessment in its Order No. IH 75-4, issued on March 5, 1975, from which the plaintiff appeals.

Mr. Daviscourt was a shareholder in States Veneer Co., a closely held wood products firm. He was one of six business associates who had been co-employees and shareholders in a number of wood products ventures, dating prior to 1960, including States Veneer Co.

Because of financial difficulties involved in the creation of the company in 1966, Mr. Daviscourt agreed to take only a nominal salary from States Veneer Co. Mr. Daviscourt's receipt of approximately

$36,000 a year from Sarawak International for his work at an affiliated wood products firm in Borneo made it possible for him to accept the smaller salary. From August 1966 to November 1970, Mr. Daviscourt actually received $37,292.80 from States Veneer Co. With an adequate cash flow, his expected salary from States Veneer Co. would have approximated $200,000.

About a month before Mr. Daviscourt's death, in November 1970, the corporation began to explore the creation of a retirement program for its key employees. It was orally and informally agreed that the corporation would examine various funding programs and explore all alternatives, looking toward the creation of a retirement-and-death-benefit program. The testimony is obscure, but there are intimations of an understanding that in the event one of the key employees died, his family "would be taken care of."

At the time of Mr. Daviscourt's death, only the first step of a still inchoate plan, the purchase of keyman insurance on the lives of its six chief officer-employees, had been implemented. This included a policy of $225,000 on the life of Mr. Daviscourt, payable to the corporation. Mrs. Ruby Daviscourt testified that her husband told her of the insurance and she understood and supposed it was to inure to her benefit, possibly as funding for the corporation to redeem her husband's States Veneer Co. stock in the event of his death. Another of Mr. Daviscourt's associates, Mr. Richard A. Jones, testified that the insurance was for the corporation, but his testimony was impeached somewhat by the introduction of his deposition wherein he stated that the purpose of the insurance was "to develop some sort of retirement income for our families or dependents." However, he indicated that no method had been formulated. States Veneer's financial vice-president and the person principally responsible for suggesting the retirement plan

and the purchase of the insurance, Mr. Ted J. Langton, stated that the insurance proceeds were only for the benefit of the corporation and were not earmarked for any other purpose.

After the death of Mr. Daviscourt, Mrs. Daviscourt began to press for payment to her of the $225,000 due to the corporation under the insurance policy. The corporation's board agreed in principal that Mrs. Daviscourt should be provided for, but were not able immediately to agree upon the form of payment or the amount of payment because, as above stated, their planning had barely begun. During some point in the negotiation, Mrs. Daviscourt was threatening suit based on her theory of recovery of the insurance proceeds. On November 19, 1971, an agreement was finally reached between Mrs. Daviscourt and States Veneer Co. A specially drafted death benefit plan, designated as a "Retirement Benefit Plan," provided for the payment of $213,056.99 to Mrs. Daviscourt over a period of seven years. The figure was based on a formula which had been suggested by Mr. Langton, as follows: Mr. Daviscourt, under a typical salary for a person of his experience and abilities, would have received $199,956.80 in salary. To this was added "interest" of $20,555, less the $37,292.80 of salary actually received by Mr. Daviscourt. The sum of these three numbers, $183,219, was rounded to $180,000. By adding the $33,056.99 already received by Mrs. Daviscourt to "tide her over" after the death of her husband, the $213,056.99 figure is produced.

The "Retirement Benefit Plan" recites, in part:

"WHEREAS at the time of death of the said Nicholas L. [sic] Daviscourt, December 5, 1970, representatives of Corporation and the respective stockholders had made tentative arrangements to establish retirement provisions for said respective stockholders, and Corporation is willing and de-

sirous of implementing the tentative arrangements for the benefit of the widow of Nicholas L. [sic] Daviscourt, * * *."

The entry of the corporation into the retirement benefit plan with Mrs. Daviscourt was authorized in the corporation's meeting held on November 1, 1971. The minutes of that meeting authorizing the payment include the following:

"A discussion was held relative to Nicholas L. [sic] Daviscourt, who during his lifetime, devoted his capabilities, resources, and efforts jointly with other stockholders of corporation to promote its business affairs and financial success, and at the time of the death of Nicholas L. [sic] Daviscourt, December 5, 1970, representatives of the corporation and the respective stockholders had made tentative arrangements to establish retirement provisions for respective stockholders and for the purchase of a deceased shareholder's shares."

During that same meeting, payment of $50,000 to Mrs. Daviscourt for Mr. Daviscourt's shares of States Veneer Co.'s common and preferred stock was authorized.

■■ The established rule is that, for payments from a corporation to the spouse of one of its deceased employees to be included in that employee's estate for purposes of the inheritance tax, there must be a contractual requirement on the corporation to make the payments. If the spouse is a third-party beneficiary of a contract entered into between the decedent and his or her employer, the payments will be subject to tax. *Est. of Seitz v. Dept. of Rev.*, 6 OTR 241, 249 (1975). In *Adams v. Dept. of Rev.*, 6 OTR 384 (1976), it was held that to be subject to Oregon's inheritance tax, payments made by the employer to the decedent's widow must result from contractual obligations on the part of the employer:

"* * * The mere facts that the decedent died

and thereafter his widow received property are not determinative. The receipt of the property must be by reason of the death, and not by reason of the independent acts of some third party under no contractual duty, * * *."

Both the plaintiff and the defendant accept the above rule as the applicable law, but disagree as to the conclusion which flows from the facts. Defendant contends the preponderance of the evidence shows that there was an enforceable agreement on the part of the corporation to pay Mr. Daviscourt's widow certain moneys at his death. The plaintiff asserts that the evidence shows no such agreement. The court agrees with the plaintiff.

The court believes that the plaintiff has met its burden of proof in showing that there was no duty upon the corporation to make any payments whatsoever to Mrs. Daviscourt as a result of the death of her husband. Defendant's counsel suggests that the $225,000 received by the corporation as a result of its keyman life insurance on Mr. Daviscourt was required to be paid to his widow. The defendant points to the hearsay testimony of Mrs. Daviscourt (to which no objection was made) that her husband had told her that the life insurance was for her benefit, and the testimony in the deposition of Richard Jones stating that he thought the insurance was supposed to fund retirement benefits for the key employees and their families. It was also pointed out that the $213,056.99 that Mrs. Daviscourt will receive from the corporation approximated the $225,000 that the corporation received on the life insurance of Mr. Daviscourt.

This testimony is in direct contrast to Mr. Langton's testimony that the keyman insurance was only for the benefit of the corporation and there was no agreement, oral or otherwise, to make payment to any

beneficiary from the proceeds on or before the decedent's death. Even if the court found that the keyman insurance was planned eventually to be tied to funding for a pension plan, death benefits or a buy-sell agreement, no evidence of the existence of such agreement before December 5, 1970, was presented.

The defendant also argues that the six shareholder-employees of States Veneer Co. have long been business associates of each other, and would have easily made oral agreements with each other regarding the care of their families in the event of their death. The court was urged to accept the "Retirement Benefit Plan" as a reduction to writing of a prior agreement. The court does not hesitate to weigh evidence of such an oral agreement as a basis for imposing the inheritance tax, if it is sufficient in clarity and quality. This court has accepted the principle that technicalities of contract law must be ignored to find the true relationship between the decedent and the beneficiaries of his or her estate. Substance prevails over form in tax questions. *Est. of Seitz, supra,* at 249. As stated in a case cited by defendant, *In re Brackett's Estate,* 342 Mich 195, 206-207, 69 NW2d 164, 169-170 (1955), the taxability of a transfer is not to be determined by refinements of conveyances.

Again, the testimony does not show that there was such an oral agreement. The testimony of all the parties was that the "Retirement Benefit Plan" was drafted after decedent's death to provide Mrs. Daviscourt with a means of support and it was not compelled by any contract between the corporation and Mr. Daviscourt. There was never any agreement that Mr. Daviscourt's estate would be paid the back salary that was foregone on the event of his death. Only testimony of past consideration was suggested to the court, and this does not support a contract. *See Est. of Bogley v. United States,* 514 F2d 1027

(Ct Cl 1975), 35 AFTR2d 1646; *Charleston National Bank v. United States,* 221 F Supp 271 (SD W Va 1963), 63-2 USTC ¶ 12,161, 12 AFTR2d 6202; *Pauline F. Paschkes,* 28 CCH Tax Ct Mem 1318 (1969); *Estate of Jack Messing,* 17 P-H Tax Ct Mem 474 (1948);[1] *Shaughnessy v. Commissioner of Corp. & Tax.,* 75 Mass App Adv Sh 672, — Mass App ——, 326 NE2d 912 (1975); *Estate of Stevens,* 266 Wis 331, 63 NW2d 732 (1954).

There can be no doubt that States Veneer Co.'s key employees had agreed among each other that pension and death benefit plans would be adopted in the near future. Despite the fact that no contract had been drawn, all parties agreed that upon the death of one of them, his family's financial need would be recognized. However, such agreements are not definite or certain enough to be a contractual duty upon the corporation. There was no agreement as to how much was to be paid, who was to be paid, how and when payments were to be made, and under what circumstances. It is not difficult to understand, within the testimony of the close business relationship of the key officer-employees, that upon the unexpected death of one of the leaders, the five remaining business associates would feel a sufficient moral commitment to agree to pay $213,056.99 of benefits to the widow of a close friend from the corporate assets they owned and controlled. This would especially be true where tentative plans to create pension and profit-sharing plans had already been considered.

---

[1] Defendant has pointed out that the federal courts decided some of the cases cited under the federal estate tax law as it appeared in the Internal Revenue Code of 1939, and these cases are superseded by the Internal Revenue Code of 1954, § 2039, which broadened the "vested rights" concept. However, the logic of the cases cited is still applicable to Oregon's inheritance tax law, under which an asset must pass through the decedent's estate. *Est. of Seitz v. Dept. of Rev.,* 6 OTR 241 (1975).

Defendant's Order No. IH 75-4 is hereby set aside and held for naught. The department is further directed to withdraw its Notice of Determination and Assignment of Inheritance Tax No. 185464. Plaintiff is entitled to costs and reasonable attorney fees.